Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040

Attorney for Defendants
WARNER/CHAPPELL MUSIC, INC.,
WARNER BROS. RECORDS INC.,
WEA INTERNATIONAL, INC.,
TOMMY BOY MUSIC, INC., incorrectly sued as Tommy Boy Entertainment, LLC, formerly known as Tommy Boy Records, and T-BOY MUSIC, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| LORENZO PRYOR, TRENA STEWARD, and KARLA RAY,<br><br>Plaintiffs,<br><br>vs.<br><br>WARNER/CHAPPELL MUSIC, INC.; ERIK FRANCIS SCHRODY a/k/a EVERLAST; WARNER BROS. RECORDS, INC.; RHINO ENTERTAINMENT COMPANY; TOMMY BOY ENTERTAINMENT, LLC, formerly known as TOMMY BOY RECORDS; WEA INTERNATIONAL, INC.; WARNER BROS. ENTERTAINMENT, INC.; T-BOY MUSIC, LLC; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. CV 13-04344 RSWL AJWx<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS T-BOY MUSIC, LLC AND WARNER/CHAPPELL MUSIC, INC.'S MOTION TO DISMISS<br><br>[Fed. R. Civ. P. 12(b)(6)]<br><br>Date: January 7, 2014<br>Time: 10:00 a.m.<br><br>Courtroom of the Honorable<br>Ronald S.W. Lew<br>United States District Judge |

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORTIES ................................................1

  (a) Summary of Argument ................................................................................1

  (b) Summary of the Third Amended Complaint's Allegations .............................2

    (1) The 1974 *Bumpin* Musical Composition and Sound Recording..................2

    (2) The 1998 License Between Caesar's Music and T-Boy Music, Authorizing Everlast's Use of the *Bumpin* Musical Composition...............3

    (3) The 1998 Release of Everlast's *Get Down*, Which Plaintiffs Now Agree Does Not Use the *Bumpin* Musical Composition .............................4

    (4) After David Pryor's Death in 2006, Plaintiffs and Pryor's Other Heirs Succeeded to His Rights and Obtained by Assignment the Rights of Caesar's Music and Private Stock..............................................................5

    (5) The Claims that Plaintiffs Assert in their Third Amended Complaint .........5

2. THE MOTION TO DISMISS IS PROPERLY GRANTED.................................6

  (a) The Standards Governing this Motion ..............................................................6

  (b) Plaintiffs' Second Claim for Contributory Infringement of the *Bumpin* Sound Recording Copyright Fails As a Matter of Law ......................................6

    (1) The Elements of a Claim for Contributory Infringement of Copyright........6

    (2) Plaintiffs Fail to Plead that T-Boy Music Caused or Induced the Alleged Infringement of the *Bumpin* Sound Recording Copyright and Did So with Knowledge of the Alleged Infringement.................................7

      *(i) The Alleged License to T-Boy Music of Rights in the* Bumpin *Musical Composition Does Not Establish that T-Boy Music Caused or Induced the Alleged Infringement of the* Bumpin *Sound Recording Copyright*................................................................7

*(ii) Plaintiffs Fail to Plead that T-Boy Music "Had Knowledge" of the Alleged Infringement of the* Bumpin *Sound Recording Copyright* ..........8

(c) Plaintiffs' Third Claim for Breach of the 1998 License of Rights to the *Bumpin* Musical Composition Is Defeated by Plaintiffs' Concession that the *Bumpin* Musical Composition Was Not Used.............................................10

(d) Warner/Chappell Is Properly Dismissed Because Plaintiffs Assert No Claims Against It ..................................................................................11

3. CONCLUSION ...............................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955,
   167 L.Ed.2d 929 (2007) ................................................................................6, 9

*e-Cash Technologies v. Guargliardo*, 127 F. Supp. 2d 1069 (C.D. Cal. 2000) .......6, 9

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) ................................................6, 8

*Ileto v. Glock. Inc.*, 349 F.3d 1191 (9th Cir. 2003), *cert. denied*
   543 U.S. 1050, 125 S.Ct. 865, 160 L.Ed.2d 770.........................................................5

*McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457,
   49 Cal. Rptr. 3d 227 (2006) ...................................................................................10

*Newton v. Diamond*, 204 F. Supp. 2d 1244 (C.D. Cal. 2002), *aff'd*
   388 F.3d 1189, *cert. denied* 545 U.S. 1114, 125 S.Ct. 2905,
   162 L.Ed.2d 294 ......................................................................................................3

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007),
   *cert. denied* 553 U.S. 1079, 128 S.Ct. 2871, 171 L.Ed.2d 811 .................. 6, 8, 9, 10

**Rules**

Federal Rule of Civil Procedure 12 .......................................................................1, 5

**Treatises**

M. & D. Nimmer, *Nimmer on Copyright* (2013) .........................................................3

# MEMORANDUM OF POINTS AND AUTHORTIES

## 1. INTRODUCTION

### (a) Summary of Argument

Defendants Warner/Chappell Music, Inc. ("Warner/Chappell") and T-Boy Music, LLC ("T-Boy Music"), respectfully submit this Memorandum in support of their Motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs allege that they, as heirs of the late David Pryor and by assignments from others, own the copyrights in the 1974 musical composition and sound recording titled *Bumpin' Bus Stop* ("*Bumpin*"). In their initial Complaint, they alleged, *inter alia*, that both the *Bumpin* musical composition and sound recording copyrights had been infringed by Everlast's 1998 *Get Down* because two words – "get down" – are allegedly taken from *Bumpin*.

There are multiple defects in plaintiffs' 15-year-old claims and, recognizing some of those defects, plaintiffs have now filed three amended complaints to try to cure some of them. In the course of doing so, plaintiffs have abandoned their claim that Everlast's *Get Down* infringes the *Bumpin* musical composition copyright. Thus, plaintiffs' Third Amended Complaint now alleges only the infringement of their claimed sound recording copyright. Plaintiffs' first claim is for direct infringement of that copyright and is not asserted against T-Boy Music or Warner/Chappell. While the alleged use of two words from a sound recording would, if true, be de minimis, that will be raised by summary judgment. But, other claims are properly dismissed at the pleading level.

Plaintiffs' second claim is for contributory infringement of the *Bumpin* sound recording copyright and is asserted against T-Boy Music, only. That claim fails as a matter of law because contributory infringement requires that the alleged contributory infringer knowingly caused or induced the infringement. Plaintiffs, however, allege only that in 1998 T-Boy Music obtained a license to use the *Bumpin* musical composition. Obtaining a license to use a musical composition is not

1

inducing, let alone knowingly inducing, the infringement of a sound recording copyright. *See, below* at 6-10.

Plaintiff's third claim, also asserted only against T-Boy Music, is for allegedly breaching the 1998 license by not paying royalties for the use of the *Bumpin* musical composition. Aside from the fact that the license is expressly a buy-out and, therefore, royalty-free, <u>plaintiffs have admitted that Everlast's *Get Down* does not use the *Bumpin* musical composition.</u> Accordingly, this claim also fails as a matter of law. *See, below* at 10-11.

Finally, plaintiffs continue to name Warner/Chappell as a defendant and refer to it in their general allegations, but plaintiffs expressly label their claims as being asserted only against other defendants. Since plaintiffs fail to assert any claims against Warner/Chappell, it is properly dismissed. *See, below* at 11.

### (b) Summary of the Third Amended Complaint's Allegations

#### (1) The 1974 *Bumpin* Musical Composition and Sound Recording

Plaintiffs allege that in 1974, David Pryor wrote the musical composition *Bumpin* and recorded the performance of that composition by his band, the Play Boys. Third Amended Complaint ("TAC") (Document 16) at 5-6, ¶¶ 9-11.

Plaintiffs also allege that the recording of *Bumpin* is in two parts – sides A and B of a single – totaling approximately seven minutes. At one point in the first part of the recording, Pryor "says: 'Hey Gang, let me show you something! It's the hottest thing and it's on its way to the top! Step up front . . . you dig! Get down with the Bus Stop!'" *Id.* at 6-7, ¶ 12.

///
///
///
///
///

2

Separate copyrights apply to musical compositions and to sound recordings[1] and plaintiffs allege that in 1974 the copyright in the musical composition was registered with the Copyright Office by Caesar's Music Library ("Caesar's Music") and the copyright in the sound recording was registered by Private Stock Records. TAC at 8, ¶ 15.

### (2) The 1998 License Between Caesar's Music and T-Boy Music, Authorizing Everlast's Use of the *Bumpin* Musical Composition

Plaintiffs allege that Caesar's Music "entered into a Sample Agreement, dated June 16, 1998, with T-Boy Music "to sample and create a derivative work based on the Composition for 'Bumpin' Bus Stop." TAC at 12, lines 19-24 (emphasis added.)

Plaintiffs' pleading is unambiguous that this license to T-Boy Music applied only to the use of the *Bumpin* musical composition and did not purport to grant rights to use the *Bumpin* sound recording. Thus, plaintiffs allege that "in order to sample the sound recording in 'Bumpin' Bus Stop,' T B Music was required to obtain a separate license to use the sound recording (not just the musical composition) but failed to do so. In fact, the Sample Agreement does not even purport to grant rights in the Record but only the Composition, which are separate and distinct copyrightable subject matter." *Id.* at 12, line 26, to 13, line 4 (parenthetical in original).

///

---

[1] "Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights." *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1249 (C.D. Cal. 2002), *aff'd* 388 F.3d 1189, *cert. denied* 545 U.S. 1114, 125 S.Ct. 2905, 162 L.Ed.2d 294. "The distinction may be summed up as the difference between a copyright in a Cole Porter song, and a copyright in Frank Sinatra's recorded performance of that song . . . . The former would be a musical work copyright and the latter would be a sound recording copyright, although both may be embodied in the same phonorecord." 1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 4.06, fn. 1 (2013).

3

### (3) The 1998 Release of Everlast's *Get Down*, Which Plaintiffs Now Agree Does Not Use the *Bumpin* Musical Composition

Plaintiffs allege that "Everlast" is the professional name of defendant Erik Schrody, "an American singer and songwriter [and a] three-time Grammy award-winning producer and recording artist, having been affiliated with some of the best selling music in history." TAC at 4, ¶ 7(a).

Plaintiffs allege that Everlast's 1998 record, *Get Down*, includes a snippet from the *Bumpin* recording, namely a sample of the words "get down" from Pryor's statement "Hey Gang, let me show you something! It's the hottest thing and it's on its way to the top! Step up front . . . you dig! Get down with the Bus Stop!'" *Id.* at 6-7, ¶ 12, & at 15, lines 17-20 ("Specifically, [Everlast's] 'Get Down' samples the recorded voice of David Pryor, exclaiming 'Get Down' . . .").

<u>Although plaintiffs initially claimed this alleged use also constituted a use of the *Bumpin* musical composition, they have since abandoned that claim.</u> *See,* Stip. to Order granting leave to amend (Document 14) at 1, lines 14-24 (agreeing to omit "claim for infringement of a composition copyright" from amended pleading) & Order (Document 15) at 2, ¶ 1(a) (granting plaintiffs leave to file an amended complaint that, *inter alia*, "omits (i) the second claim for infringement of a musical composition copyright, (ii) the portions of the third claim for contributory infringement that relate to the alleged infringement of a musical composition copyright, . . .").

Accordingly, plaintiffs' Third Amended Complaint does <u>not</u> allege the use of the *Bumpin* musical composition, only the word "get down" from the *Bumpin* sound recording.

///
///
///
///

4

**(4) After David Pryor's Death in 2006, Plaintiffs and Pryor's Other Heirs Succeeded to His Rights and Obtained by Assignment the Rights of Caesar's Music and Private Stock**

Plaintiffs allege that David Pryor died in 2006 and that in 2011 his rights in *Bumpin* were distributed in probate to plaintiffs Lorenzo Pryor, Trena Steward and Karla Ray, and two other "family members," non-parties Sheila Hines and Margaret Pryor. TAC at 9-10, ¶¶ 18-20.

Plaintiffs also allege that, although they dispute that Caesar's Music and Private Stock Records had any rights in *Bumpin*, plaintiffs obtained assignments of rights from those companies in 2011. TAC at 10-11, ¶¶ 21-22.

**(5) The Claims that Plaintiffs Assert in their Third Amended Complaint**

Plaintiffs' Third Amended Complaint asserts the following claims:

- A first claim for infringement of the *Bumpin* sound recording copyright, asserted against defendants TB Entertainment, Warner Bros. Records, WEA International and Rhino Entertainment Co. (TAC at 15-20).

- A second claim for contributory infringement of the sound recording copyright, asserted against T-Boy Music (*id.* at 21-22);

- A third claim for breach of the 1998 license of rights to use the *Bumpin* musical composition, asserted against T-Boy Music (*id.* at 22-25); and

- A fourth claim for infringement of the *Bumpin* sound recording copyright by using the words "step up" in a television show, asserted against Warner Bros. Entertainment, Inc. (*id.* at 25-27).[2]

///

---

[2] The television company Warner Bros. Entertainment, Inc. is not related to Warner/Chappell *et al.*, and the alleged use of the words "step up" in a television show is not related to the alleged use of the words "get down" in Everlast's record. It is unclear why plaintiffs chose to assert in this action the claim against Warner Bros. Entertainment, Inc.

## 2. THE MOTION TO DISMISS IS PROPERLY GRANTED

### (a) The Standards Governing this Motion

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of the claims asserted in the complaint." *Ileto v. Glock. Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003), *cert. denied* 543 U.S. 1050, 125 S.Ct. 865, 160 L.Ed.2d 770. While "[t]he Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them" (*eCash Technologies v. Guargliardo*, 127 F. Supp. 2d 1069, 1074 (C.D. Cal. 2000)), the plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *quoting Twombly*, 550 U.S. at 570.

### (b) Plaintiffs' Second Claim for Contributory Infringement of the *Bumpin* Sound Recording Copyright Fails As a Matter of Law

#### (1) The Elements of a Claim for Contributory Infringement of Copyright

"Contributory copyright infringement is a form of secondary liability with roots in the tort-law concepts of enterprise liability and imputed intent . . . . [A] defendant is a contributory infringer if it (1) has knowledge of a third party's infringing activity, and (2) 'induces, causes, or materially contributes to the infringing conduct.'" *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794-95 (9th Cir. 2007), *cert. denied* 553 U.S. 1079, 128 S.Ct. 2871, 171 L.Ed.2d 811, *quoting Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).

///
///
///

### (2) Plaintiffs Fail to Plead that T-Boy Music Caused or Induced the Alleged Infringement of the *Bumpin* Sound Recording Copyright and Did So with Knowledge of the Alleged Infringement

Plaintiffs' second claim is for contributory infringement of the *Bumpin* sound recording copyright and is asserted only against T-Boy Music. TAC at 21, lines 1-3. Plaintiffs' own allegations establish that T-Boy Music did not cause or induce the alleged infringement of the sound recording copyright, let alone do so knowingly.

#### (i) The Alleged License to T-Boy Music of Rights in the *Bumpin* Musical Composition Does Not Establish that T-Boy Music Caused or Induced the Alleged Infringement of the *Bumpin* Sound Recording Copyright

In an attempt to establish the first requirement for contributory infringement – that T-Boy Music caused or induced the alleged infringement of the sound recording copyright – plaintiffs allege that T-Boy Music, having obtained the 1998 license from Caesar's Music, "caused and granted . . . unauthorized licenses" to create and distribute Everlast's *Get Down*. *Id.* at 21, ¶ 50. But, plaintiffs specifically allege that the 1998 Caesar's Music license refers only to the right to use **the *Bumpin* music composition**, not the *Bumpin* sound recording. TAC at 12, lines 19-24 (the 1998 license authorized the creation of a new "work based on the Composition for 'Bumpin' Bus Stop'" (emphasis added)). And, plaintiffs also specifically allege that Caesar's Music's 1998 license to T-Boy Music "does not even purport to grant rights in the Record but only the Composition, which are separate and distinct copyrightable subject matter." TAC at 12, line 26, to 13, line 4 (emphasis added); *see, above* at 3, n. 1.

As a result, T-Boy Music's alleged licensing of rights based on the 1998 license – even if Caesar's Music was, as plaintiffs allege, "unauthorized" to issue that 1998 license – would only have licensed or purported to license the use of the

7

1   *Bumpin* musical composition. The *Bumpin* musical composition and the *Bumpin*
2   sound recording are "separate and distinct" and plaintiffs not only concede but
3   affirmatively allege that licensing rights to use the musical composition is not
4   licensing rights to use the sound recording. TAC at 12, line 26, to 13, line 1 ("in
5   order to sample the sound recording in 'Bumpin' Bus Stop,' . . . a separate license to
6   use the sound recording (not just the musical composition)" is "required")
7   (parenthetical in original)). Because plaintiffs' own allegations are that the 1998
8   license did "not even purport to grant rights in the Record," T-Boy Music's receipt
9   or reliance on that license would have caused or induced only the use of the musical
10  composition – which plaintiffs concede has not been infringed – and not the use of
11  the "separate and distinct" allegedly-infringed *Bumpin* sound recording. *Perfect 10*,
12  494 F.3d at 795 (contributory infringement requires, *inter alia*, that the defendant
13  "induce[d], cause[d], or materially contribute[d] to the infringing conduct"), *quoting*
14  *Ellison*, 357 F.3d at 1076.
15      As a result, plaintiffs fail to allege "sufficient factual matter" (*Iqbal*, 556 U.S.
16  at 678) establishing that T-Boy Music caused or induced the alleged infringement of
17  the *Bumpin* sound recording copyright. For that reason alone, plaintiffs' claim
18  against T-Boy Music for contributory infringement fails.

19              *(ii)  Plaintiffs Fail to Plead that T-Boy Music "Had*
20                    *Knowledge" of the Alleged Infringement of the* **Bumpin**
21                    *Sound Recording Copyright*

22      In an apparent attempt to establish the second requirement for contributory
23  infringement – that T-Boy Music had "knowledge of a third party's" infringement of
24  the *Bumpin* sound recording copyright (*Perfect 10*, 494 F.3d at 795) – plaintiffs
25  allege that T-Boy Music "knew that [the 1998] license was not authorized by the
26  original author, Dave Pryor and his band, and that Caesar's Music could not furnish
27  a valid exclusive assignment or assignment of rights, . . . ."
28  ///

1       But, plaintiffs' allegation that T-Boy Music "knew" Caesar's Music did not have authority to issue the 1998 license of rights in the *Bumpin* composition (1) is conclusory and (2) is directly contrary to plaintiffs' own express allegation that <u>Caesar's Music has been the registered owner of the *Bumpin* composition copyright since 1974</u>. *See,* TAC at 8, lines 9-12 ("The Composition was federally registered by Private Stock Records' music publisher, Caesar's Music Library, in January 1975 [Reg. No. Eu563138 (Bumpin' Bus Stop, Pt. l) and Reg. No. Eu563139 (Bumpin' Bus Stop, P t .2)]" (parentheticals in original)). A licensee is entitled to rely on the Copyright Office records. And, the only inference that can be reasonably drawn from plaintiffs' own allegation that Caesar's Music had been the registered owner of the musical composition copyright since 1974 and until the alleged 2011 assignment to plaintiffs, is that T-Boy Music had good reason to believe in 1998 that Caesar's Music owned that copyright. Accordingly, plaintiffs' conclusory allegation that T-Boy Music "knew" the musical composition's registered copyright owner did not have authority to license its own registered work, is properly disregarded. *eCash Technologies v. Guargliardo*, 127 F. Supp. 2d 1069, 1074 (C.D. Cal. 2000) (on a motion to dismiss, "the Court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations").

Moreover, plaintiffs allege that the 1998 license only allowed use of the *Bumpin* musical composition. As a result, even if T-Boy Music somehow "knew" Caesar's Music did not have authority to issue the 1998 license for Caesar's Music's own registered *Bumpin* musical composition, that would only mean that <u>the *Bumpin* composition</u> could not be used (and plaintiffs concede it was not). The alleged knowledge that the composition could not be used has no bearing on other defendants' alleged infringement of <u>the *Bumpin* sound recording copyright</u>.

Finally, plaintiff also allege that when T-Boy Music registered copyright in the 1998 *Get Down* composition, T-Boy Music referred to it as containing an

"interpolation" (a use of the composition) rather than a sample (a use of the sound recording). TAC at 21, line 27, to 22, line 2. But, that allegation establishes neither that T-Boy Music caused or induced the alleged infringement of the *Bumpin* sound recording nor that it had "knowledge of a third party's infringing activity" with respect to the sound recording. *Perfect 10*, 494 F.3d at 795.

At most, plaintiffs allege that in 1998 T-Boy Music received an ineffective license of rights to use the *Bumpin* musical composition. Further, plaintiffs' concede that the *Bumpin* composition and sound recording copyrights are "separate and distinct" (TAC at 13, lines 1-3), and allege that the 1998 license has no bearing on the *Bumpin* sound recording copyright (*id.*). As a result, plaintiffs fail to allege "sufficient factual matter" (*Iqbal*, 556 U.S. at 678) establishing that T-Boy Music both (1) caused or induced the alleged infringement of the *Bumpin* sound recording copyright and (2) did so with "knowledge of a third party's infringing activity." *Perfect 10*, 494 F.3d at 795.

Accordingly, the second claim for contributory infringement of plaintiffs' alleged sound recording copyright is properly dismissed.

### (c) **Plaintiffs' Third Claim for Breach of the 1998 License of Rights to the *Bumpin* Musical Composition Is Defeated by Plaintiffs' Concession that the *Bumpin* Musical Composition Was Not Used**

Plaintiff's third claim is also asserted only against T-Boy Music and is a State law claim for breach of the 1998 Caesar's Music license. TAC at 22, lines 11-21. Under California law, "[a] cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1489, 49 Cal. Rptr. 3d 227 (2006).

Here, plaintiffs allege that they succeeded to Caesar's Music's rights under the 1998 license of rights to use the *Bumpin* musical composition and that T-Boy Music has failed to pay them royalties and accord them credit for the use of the *Bumpin*

1 musical composition.  *See,* TAC at 22-24, ¶¶ 54-55.[3]  However, plaintiffs have
2 conceded in this case that Everlast's *Get Down* does not actually use the *Bumpin*
3 musical composition.  *See, above* at 4, lines 12-23.  Thus, although plaintiffs state
4 that their contract claim is pleaded "in the alternative to [their] copyright
5 infringement claims" (TAC at 22, lines 17-18), those infringement claims are limited
6 to the alleged direct and contributory infringement of the *Bumpin* sound recording
7 copyright.  Since plaintiffs concede there was no use of the *Bumpin* musical
8 composition, there is no obligation to pay them for use of that musical composition
9 and, therefore, no breach or damages.

10       Plaintiffs also allege that the 1998 license is limited to the use of the *Bumpin*
11 musical composition in Everlast's *Get Down*, and that T-Boy Music exceeded the
12 1998 license by authorizing a sample of *Get Down* in another artist's record.  TAC at
13 24-25, at ¶ 59.  But, again, plaintiffs agree that the *Bumpin* musical composition is
14 not used in Everlast's *Get Down*.  As a result, sampling Everlast's *Get Down* does
15 not sample the *Bumpin* musical composition and T-Boy Music was free to license
16 *Get Down* without implicating the 1998 license of rights in the musical composition.

17       Plaintiffs have conceded that the *Bumpin* musical composition was not used in
18 Everlast's *Get Down*.  As a result of that concession, they are not due any royalties
19 or credit for the use of that composition and there is no limitation on the licensing of
20 Everlast's *Get Down*, which they admit does not contain the *Bumpin* composition.
21 Accordingly, the third claim for breach of the 1998 license is also properly
22 dismissed.

23       **(d)**    **Warner/Chappell Is Properly Dismissed Because Plaintiffs Assert**
24                **No Claims Against It**

25       Finally, plaintiffs' Third Amended Complaint lists Warner/Chappell in the
26 caption and identifies it as a defendant.  TAC at 4-5, ¶¶ 7(d) & 8.  But other than

---

[3] These and other of plaintiffs' allegations are contrary to the terms of the 1998 license, but are assumed true for the purposes of this Motion, only.

11

1 those references, plaintiffs do not assert any of their four claims against
2 Warner/Chappell. TAC at 15, lines 1-3 (first claim, "Against" TB Entertainment,
3 Warner Bros. Records, WEA International and Rhino Entertainment Co.), at 21,
4 lines 1-3 (second claim, "Against" T-Boy Music), at 22, lines 11-22 (third claim,
5 "Against" T-Boy Music), & at 25, lines 12-14 (fourth claim, "Against" Warner Bros.
6 Entertainment).

7 Since plaintiffs name Warner/Chappell but do not assert any claims for relief
8 against Warner/Chappell, it is properly dismissed.

**3. CONCLUSION**

Plaintiffs plead, at most, a claim for the alleged infringement of their claimed *Bumpin* sound recording copyright based on the alleged use of two words from that seven minute song. While that claim will not survive summary judgment, plaintiffs' second claim against T-Boy Music for contributory liability for that alleged infringement of the *Bumpin* sound recording copyright fails at the pleading level. Plaintiffs allege that T-Boy Music merely received from the registered owner of the *Bumpin* musical composition, a 1998 license of rights to use that musical composition. Those allegations preclude, rather than establish, the requirements for contributory copyright infringement, namely that T-Boy Music both (1) caused or induced the alleged infringed of the *Bumpin* sound recording copyright and (2) did so with knowledge of other defendants' supposed infringement of that sound recording copyright.

Plaintiffs' third claim for breach of the 1998 license of rights to use the *Bumpin* musical composition also fails, because they have conceded that the *Bumpin* musical composition was not, in fact, used in Everlast's *Get Down*.

///
///
///
///

Finally, plaintiffs name Warner/Chappell as a defendant, but expressly do not assert any of plaintiffs' four claims against it. On its face, plaintiffs' Third Amended Complaint does not even try to allege a claim for relief against Warner/Chappell.

Accordingly, the Motion to dismiss is properly granted.

Respectfully submitted,

Dated: December 9, 2013

/s/ Peter J. Anderson
Peter J. Anderson, Esq.
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
Attorney for Defendants
WARNER/CHAPPELL MUSIC, INC.,
WARNER BROS. RECORDS INC.,
WEA INTERNATIONAL, INC.,
TOMMY BOY MUSIC, INC.,
and T-BOY MUSIC, LLC