1
2
3
4
5
6
7
8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10
11   Lorenzo Pryor et al.,        )  CV 13-4344 RSWL (AJWx)
                                   )
12                Plaintiffs,      )
                                   )  **ORDER re: Defendants**
13        v.                       )  **Warner/Chappell Music,**
                                   )  **Inc. and T-Boy Music,**
14                                 )  **LLC's Motion to Dismiss**
     Warner/Chappell Music, Inc.   )  **the Complaint [19]**
15   et al.,                       )
                                   )
16                                 )
                                   )
17                Defendants.      )
                                   )
18                                 )
                                   )
19   _____)

20        Currently before the Court is Defendants

21   Warner/Chappell Music, Inc. and T-Boy Music, LLC's

22   Motion to Dismiss the Complaint [19].  Plaintiffs

23   Lorenzo Pryor, Trena Steward, and Karla Ray

24   (collectively, "Plaintiffs") filed their Opposition on

25   December 17, 2013 [24].  Defendants Warner/Chappell

26   Music, Inc. and T-Boy Music, LLC filed a Reply on

27   December 24, 2013 [27].  This matter was taken under

28   submission on January 2, 2014 [31].  Having reviewed

                              1

all papers submitted pertaining to the Motion, and
having considered all arguments presented to the Court,
the Court **NOW FINDS AND RULES AS FOLLOWS:**

Defendants Warner/Chappell Music, Inc. and T-Boy
Music, LLC's Motion to Dismiss is hereby **GRANTED.**

## I.   Background

Plaintiffs are children of the deceased David
Pryor, of the music group Thunder & Lightning.   Third
Amended Compl. ("TAC") ¶¶ 4-6.   Each of the Plaintiffs
has an ownership interest in the song entitled "Bumpin'
Bus Stop," which was written by David Pryor.   <u>Id.</u>

Defendant Erik Francis Schrody a/k/a Everlast
("Everlast") is an American singer and songwriter; he
is the front-man for the rap group House of Pain.   <u>Id.</u>
at ¶ 7.   Defendant Warner Bros. Records, Inc. ("WB
Records") is an American record company engaged in the
business of manufacturing, selling, and distributing
musical recordings.   <u>Id.</u>   Defendant WB Records is owned
by its parent company, Warner Music Group ("WMG").
Defendant Warner Bros. Entertainment, Inc. ("WB
Entertainment") is a multi-media entertainment company
that owns a television production division known as
Warner Bros. Television, which creates and produces
television content for various networks.   <u>Id.</u>
Defendant Warner/Chappell Music, Inc.
("Warner/Chappell") is an American music publisher
owned and operated by its parent company WMG.   <u>Id.</u>
Defendant Rhino Entertainment Company ("Rhino") is an

American record company owned by WMG.  Defendant WEA
International, Inc. ("WEA") ships and distributes WMG
and Rhino affiliated musical recordings
internationally.  Id.  Defendant T-Boy Music, LLC ("TB
Music") is an American music publishing company that
publishes, produces, and distributes music.  Id.

Plaintiffs are the heirs of David Pryor, who wrote
the musical composition entitled "Bumpin' Bus Stop."
Id. at ¶ 9.  David Pryor also produced and recorded the
fixed sound recording for "Bumpin' Bus Stop."  Id.
After he wrote the composition for "Bumpin' Bus Stop,"
David Pryor rented studio time, space, and equipment
from Gold Future Recording Studio in Kirkwood,
Missouri.  Id. at ¶¶ 10-11.  That recording session
with David Pryor and his band, the Play Boys, resulted
in a recording bearing the Gold Future label and
artwork.  Id. at ¶ 11.  On the A-Side of the Gold
Future record, David Pryor says "Hey Gang, let me show
you something!  It's the hottest thing and it's on its
way to the top!  Step up front . . . you dig!  Get down
with the Bus Stop!"  Id. at ¶ 12.  In 1974, after the
Gold Future record was fully mixed and complete, David
Pryor had a copyright notice stamped on his record
while he and his band members promoted and distributed
the record.  Id. at ¶ 13.

In 1975, after David Pryor presented his Gold
Future record to Private Stock Records, Private Stock
Records used its equipment to enhance the mix and sound

quality of the original recording for "Bumpin' Bus
Stop." Id. at ¶ 14. Private Stock Records changed the
name of David Pryor's band to "Thunder & Lightning,"
changed the record title's spelling, and changed the
record's artwork. Id.

Private Stock Record's music publisher, Caesar's
Music Library ("Caesar's Music"), federally registered
the composition to "Bumpin' Bus Stop" in January 1975
(Reg. No. Eu563138 and Eu563139). Id. at ¶ 15. The
registrations misattribute authorship and omit that the
work was based on David Pryor's preexisting 1974 work.
Id.

David Pryor did not give Caesar's Music an
assignment of rights or an exclusive license to the
composition or record for "Bumpin' Bus Stop." Id. at ¶
16. David Pryor likewise did not grant Caesar's Music
an assignment or transfer of his renewal rights in the
composition or record for "Bumpin' Bus Stop." Id.
Private Stock Records obtained a compulsory license to
distribute the record of "Bumpin' Bus Stop." Id.

David Pryor died on May 14, 2006. Id. at ¶ 18.
David Pryor did not discover any of the alleged acts of
infringement by the Defendants during his lifetime.
Id. at ¶ 19. On June 16, 2011, the Probate Division of
the Circuit Court of St. Louis County, Missouri,
entered a Judgment Determining Heirs, granting
ownership rights in the recording and composition of
"Bumpin' Bus Stop" to Trena Steward, Lorenzo Pryor,

4

Karla Ray, Sheila Hines, and Margaret Pryor.  *Id.* at ¶
20, Ex. 3.

     After the entry of the Judgment Determining Heirs,
Plaintiffs demanded that Private Stock Records and
Caesar's Music either furnish proof of any claim of
ownership or correct the inaccurate copyright
registrations.  *Id.* at ¶ 22.  On August 16, 2011,
Caesar's Music assigned to Plaintiffs any and all of
its purported rights in and to "Bumpin' Bus Stop" in
exchange for a release of claims made by Plaintiffs.
*Id.*  On October 16, 2012, Private Stock Records did the
same.  *Id.*

     Plaintiffs' composition and recording rights are
the subject of Copyright Registration Nos. V3612D942
and V3613D044.  *Id.* at ¶ 23.

     Plaintiffs discovered that Caesar's Music entered
into a sample agreement, dated June 16, 1998, with
Defendant TB Music to sample and create derivative
works based on the composition for "Bumpin' Bus Stop."
*Id.* at ¶ 25.  Plaintiffs allege that Caesar's Music was
not authorized to consent to the making of derivative
works based on the composition for "Bumpin' Bus Stop."
*Id.*  Plaintiffs further allege that Defendant TB Music
gave unauthorized permission to Defendants WB
Entertainment, Rhino, WEA, Warner/Chappell, and WB
Records to use, exploit, and distribute a sample of the
composition and record to "Bumpin' Bus Stop" by
releasing a record entitled "Get Down."  *Id.*  "Get

Down" allegedly features Defendant Everlast and bears the copyright registration No. PA 917-380. <u>Id.</u> "Get Down" allegedly infringes on Plaintiffs' copyright by repeatedly sampling David Pryor's voice from the sound recording of "Bumpin' Bus Stop." <u>Id.</u> at ¶ 31.

On May 1, 2012, Plaintiffs submitted a completed application for a separate copyright registration for the recording David Pryor made at Gold Future and published in 1974. <u>Id.</u> at ¶ 27.

Plaintiffs filed their initial Complaint on June 17, 2013 [1]. On June 20, 2013, they filed their First Amended Complaint [6]. On October 4, 2013, the Plaintiffs filed a Second Amended Complaint [12]. Finally, on November 18, 2013, the Plaintiffs filed the operative Third Amended Complaint [16]. In their TAC, Plaintiffs bring: (1) a claim for copyright infringement of the sound recording to "Bumpin' Bus Stop" against Defendants WB Entertainment, WB Records, WEA, and Rhino arising from their manufacture and distribution of Defendant Everlast's "Get Down" (TAC ¶¶ 29-47); (2) contributory copyright infringement against Defendant TB Music (<u>Id.</u> at ¶¶ 48-52); (3) breach of an express contract against Defendant TB Music (<u>Id.</u> at ¶¶ 53-62); and (4) copyright infringement against Defendant WB Entertainment for allegedly creating an infringing musical recording in the opening theme song for the sitcom "Joey" (<u>Id.</u> at ¶¶ 63-71).

Defendants TB Music and Warner/Chappell filed the

6

Instant Motion to Dismiss on December 9, 2013 [19].
Plaintiffs voluntarily dismissed Defendant
Warner/Chappell on December 18, 2013 [26].

## II.  Legal Standard

**A.  Motion to Dismiss Pursuant to Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a
party to move for dismissal of one or more claims if
the pleading fails to state a claim upon which relief
can be granted.  Dismissal can be based on a lack of
cognizable legal theory or lack of sufficient facts
alleged under a cognizable legal theory.  Balistreri v.
Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.
1990).  However, a party is not required to state the
legal basis for its claim, only the facts underlying
it.  McCalden v. Cal. Library Ass'n, 955 F.2d 1214,
1223 (9th Cir. 1990).  In a Rule 12(b)(6) motion to
dismiss, a court must presume all factual allegations
of the complaint to be true and draw all reasonable
inferences in favor of the non-moving party.  Klarfeld
v. United States, 944 F.2d 583, 585 (9th Cir. 1991).

The question presented by a motion to dismiss is
not whether the plaintiff will prevail in the action,
but whether the plaintiff is entitled to offer evidence
in support of its claim.  Swierkiewica v. Sorema N.A.,
534 U.S. 506, 511 (2002).  "While a complaint attacked
by a Rule 12(b)(6) motion to dismiss does not need
detailed factual allegations, a plaintiff's obligation
to provide the 'grounds' of his 'entitle[ment] to

relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citation omitted).  Although specific facts are not necessary if the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

If dismissed, a court must then decide whether to grant leave to amend.  The Ninth Circuit has repeatedly held that a district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts. <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000).

### III.  Discussion

**A.  <u>Request for Judicial Notice</u>**

Plaintiffs include a Request for Judicial Notice with their Opposition.  Dkt. #25.  Plaintiffs request that this Court take judicial notice of: (1) Defendant TB Music's copyright registration for the composition "Get Down;" and (2) a copy of the 1998 sample agreement between Defendant TB Music and Caesar's Music.  <u>Id.</u>

Under the incorporation by reference doctrine, the Court may "take into account documents 'whose contents

are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting <u>In re Silicon Graphics Inc. Sec. Litig.</u>, 183 F.3d 970, 986 (9th Cir. 1999)); <u>see also</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001).

The TAC explicitly references both the sample agreement and Defendant TB Music's copyright registration. <u>See</u> Compl. ¶ 25. "Copyright certificates are the type of documents that the court may judicially notice under Rule 201(b)(2)." <u>Warren v. Fox Family Worldwide, Inc.</u>, 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001) (citing <u>Oroamerica Inc. v. D & W Jewelry Co., Inc.</u>, 10 F. App'x 516, 517 n.4 (9th Cir. 2001); <u>Metro Publ'g, Ltd. v. San Jose Mercury News</u>, 987 F.2d 637 (9th Cir. 1993)). As such, the Court takes judicial notice of the copyright registration.

Additionally, Defendant TB Music does not appear to dispute the authenticity of the 1998 sample agreement, especially as it relies on the document in making one of its arguments. <u>See</u> Reply 12:1-8. Such licenses may be subject to judicial notice if they are necessarily relied upon in a complaint and their authenticity is not disputed. <u>See</u> <u>Beijing Zhongyi Zhongbiao Elec. Info. Tech. Co. Ltd. v. Microsoft Corp.</u>, C13-1300-MJP, 203 WL 6979555, at *3 (W.D. Wash. Oct. 31, 2013) (citing <u>Knievel</u>, 393 F.3d at 1076). Consequently, the

9

1  Court also takes judicial notice of the 1998 sample
2  agreement.

3  **B.   Contributory Copyright Infringement**

4       "Contributory copyright infringement is a form of
5  secondary liability with roots in the tort-law concepts
6  of enterprise liability and imputed intent." Perfect
7  10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 794-
8  95 (9th Cir. 2007) (citing Fonovisa, Inc. v. Cherry
9  Auction, Inc., 76 F.3d 259, 264 (9th Cir. 1996);
10 Perfect 10, Inc. v. Amazon.com, Inc., 487 F.3d 701 (9th
11 Cir. 2007)).  In the Ninth Circuit, "a defendant is a
12 contributory infringer if it (1) has knowledge of a
13 third party's infringing activity, and (2) 'induces,
14 causes, or materially contributes to the infringing
15 conduct.'"  Id. at 795 (quoting Ellison v. Robertson,
16 357 F.3d 1072, 1076 (9th Cir. 2004)).  Put another way,
17 "one contributorily infringes when he (1) has knowledge
18 of another's infringement and (2) either (a) materially
19 contributes to or (b) induces that infringement." Id.

20      1.  Knowledge

21      Defendant TB Music argues that Plaintiffs'
22 allegation that Defendant TB Music knew that Caesar's
23 Music did not have authority to issue the 1998 license
24 of rights in the "Bumpin' Bus Stop" musical composition
25 is contradicted by their allegation that Caesar's Music
26 had been the registered owner of the "Bumpin' Bus Stop"
27 composition copyright since 1974.  Mot. 9:1-8; Reply
28 8:10-16.

"A copyright registration 'is prima facie evidence of the validity of the copyright and the facts stated in the certificate.'"   United Fabrics Int'l, Inc. v. C&J Wear, Inc., 630 F.3d 1255, 1257 (9th Cir. 2011) (quoting 17 U.S.C. § 410(c); citing S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1085 (9th Cir. 1989)).   In this sense, Defendant TB Music was entitled to rely upon Caesar Music's registration of "Bumpin' Bus Stop" in initially licensing it.

Yet simply because Defendant TB Music's initial licensing of "Bumpin' Bus Stop" may have been without knowledge of Caesar's Music's unauthorized registration does not mean that Defendant TB Music's subsequent licensing of "Get Down" was made without knowledge of Defendants WB Records, WB Entertainment, WEA, and Rhino's infringement.

Defendant TB Music next argues that Plaintiffs' claim is implausible because Defendant TB Music, as a music publisher, could not have knowingly licensed the use of the "Bumpin' Bus Stop" sound recording.

There is a distinction in the Copyright Act between musical compositions and sound recordings.   See Bridgeport Music, Inc. v. Dimension Films, 410 F.3d 792, 796 n.3 (6th Cir. 2005) ("Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights"); Palladium Music, Inc. v. EatSleepMusic, Inc., 398 F.3d 1193, 1197 n.3 (10th Cir. 2005) ("Sound recordings and their

11

underlying musical compositions are separate works with
their own distinct copyrights"); <u>In re Cellco P'ship</u>,
663 F. Supp. 2d 363, 368 (S.D.N.Y. 2009) ("there are
separate bundles of rights in a musical composition and
in its embodiment in a sound recording"); <u>Fharmacy</u>
<u>Records v. Nassar</u>, 248 F.R.D. 507, 527 (E.D. Mich.
2008); <u>Newton v. Diamond</u>, 204 F. Supp. 2d 1244, 1249
(C.D. Cal. 2002); 17 U.S.C. § 102(a)(2), (7).

"A musical composition captures an artist's music
in written form.  A musical composition's copyright
protects the generic sound that would necessarily
result from any performance of the piece." <u>Newton</u>, 204
F. Supp. 2d at 1249 (citations omitted).  In contrast,
"the sound recording is the sound produced by the
performer's rendition of the musical work." <u>Id.</u> at
1249-50 (citation omitted).

Finally, the Copyright Act defines a "music
publisher" as "a person that is authorized to license
the reproduction of a particular musical work in a
sound recording." 17 U.S.C. § 1001(9).  Such a
definition suggest that a musical publisher only
licenses musical works, or musical compositions.  But
this definition applies only in the context of Chapter
10 of the Copyright Act, covering Digital Audio
Recording Devices and Media.  17 U.S.C. § 1001 ("*As
used in this chapter*, the following terms have the
following meanings") (emphasis added).  This definition
therefore has no bearing on Plaintiffs' allegation that

Defendant TB Music is a music publisher. In other
words, even if Defendant TB Music is a music publisher,
it could still plausibly have licensed sound recordings
to the directly infringing Defendants.

Nevertheless, the Court still finds that Plaintiffs
have failed to sufficiently allege Defendant TB Music's
knowledge of direct infringement by third parties.

"Contributory liability requires that the secondary
infringer 'know or have reason to know' of direct
infringement." A&M Records, Inc. v. Napster, Inc., 239
F.3d 1004, 1020 (9th Cir. 2001) (quoting Cable/Home
Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829,
845-46 n.29 (11th Cir. 1990); Religious Tech. Ctr. v.
Netcom On-Line Commc'n Servs., Inc., 907 F. Supp. 1361,
1373-74 (N.D. Cal. 1995)). Moreover, to establish
liability for contributory copyright infringement,
Plaintiffs must allege "more than a generalized
knowledge by the [Defendant] of the possibility of
infringement." Luvdarts, LLC v. AT&T Mobility, LLC,
710 F.3d 1068, 1072 (9th Cir. 2013). In short, so long
as Defendant TB Music knew that "Get Down" contained an
unauthorized sample of the "Bumpin' Bus Stop" sound
recording and that the other Defendants' distribution
of "Get Down" would infringe on that sound recording,
Defendant TB Music would have the requisite knowledge
for contributory copyright infringement.

Plaintiffs have alleged that Defendant TB Music
somehow knew that Caesar's Music was not authorized to

register the "Bumpin' Bus Stop" musical composition
copyright.  TAC ¶ 51.  Plaintiffs also allege that
"'Get Down' samples the recorded voice of David Pryor,
exclaiming 'Get Down.'"  TAC ¶ 31.  Plaintiffs then
allege that Defendant TB Music licensed "Get Down" to
third parties.  Id. at ¶ 51.  Finally, Plaintiffs
allege that the other Defendants infringed on
Plaintiffs' copyright by incorporating the infringing
vocal sample into "Get Down" and distributing that
song.  Id. at ¶ 32.

    Crucially, what Plaintiffs fail to allege is how
Defendant TB Music knew or had reason to know that "Get
Down" included an unauthorized, infringing sample of
the "Bumpin' Bus Stop" sound recording.  Moreover,
Plaintiffs fail to plausibly allege how Defendant TB
Music knew that the directly infringing Defendants -
Defendants WB Entertainment, WB Records, WEA, and Rhino
- would infringe as a result of Defendant TB Music's
licensing of "Get Down."  For this reason, the Court
**GRANTS** Defendant TB Music's Motion to Dismiss
Plaintiffs' contributory copyright infringement claim.
However, the Court finds that Plaintiffs could still
cure their claim by alleging additional facts.
Accordingly, the Court **DISMISSES** Plaintiffs' second
claim **with leave to amend.**

**C.   Breach of Express Contract**

    Defendant TB Music argues that Plaintiffs' breach
of contract claim fails for three reasons: (1)

Plaintiffs allege that the "Bumpin' Bus Stop" musical composition was not used (Reply 9:20-11:15); (2) the "Get Down" copyright registration only creates a rebuttable presumption that "Bumpin' Bus Stop" musical composition was used (Reply 11:16-24); and (3) the 1998 license clearly shows that Plaintiffs are not entitled to any royalties (Reply 11:25-12:10).

    The Court need not address the first two arguments because the third is dispositive.  Plaintiffs allege that they retained the right "to collect performance royalties through ASCAP or BMI for the use of the" "Bumpin' Bus Stop" composition. TAC ¶ 56.  However, the 1998 license states that Defendant TB Music was to pay "a non-returnable buyout fee" of $1,750 "for all rights for the use of the" "Bumpin' Bus Stop" musical composition.  Request for Judicial Notice, Ex. 2. While the terms of the license do state that Defendant TB Music was to register "Get Down" "with a performing rights organization" such as ASCAP or BMI, such registration was to be "in accordance with the terms of the agreement and the information attached herein as Exhibit A." Id.  Neither the language of the agreement nor Exhibit A specifies that Caesar's Music is entitled to royalties.  As the license "sets forth the entire understanding between the parties," Plaintiffs are not entitled to any payments or royalties from Defendant TB Music for its use of the "Bumpin' Bus Stop" musical composition.  Id.

As such, the plain language of the license undermines Plaintiffs' breach of contract claim because it establishes that Defendant TB Music was not obligated to provide any more payments with respect to the license, even after registering "Get Down" with a performance rights organization.  Accordingly, the Court **GRANTS** Defendant TB Music's Motion to Dismiss Plaintiffs' breach of contract claim.  Furthermore, the Court finds that Plaintiffs cannot cure the claim by pleading additional facts as doing so would contradict the terms of the license.  Accordingly, the Court **DISMISSES** Plaintiffs' third claim **without leave to amend.**

## IV.   Conclusion

For the foregoing reasons, the Court hereby **GRANTS** Defendants' Motion to Dismiss the Complaint [19]. Plaintiffs' second claim for contributory copyright infringement is **DISMISSED with 20 days leave to amend.** Plaintiffs' third claim for breach of express contract is **DISMISSED without leave to amend.**

**IT IS SO ORDERED.**

DATED: February 20, 2014

RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge

16