Peter J. Anderson, Esq., Cal. Bar No. 88891
E-Mail: pja@pjanderson.com
LAW OFFICES OF PETER J. ANDERSON
A Professional Corporation
100 Wilshire Boulevard, Suite 2010
Santa Monica, CA 90401
Tel: (310) 260-6030
Fax: (310) 260-6040

Attorney for Defendants
WARNER BROS. RECORDS INC.,
WEA INTERNATIONAL, INC.,
TOMMY BOY MUSIC, INC., incorrectly sued
as Tommy Boy Entertainment, LLC,
formerly known as Tommy Boy Records,
and T-BOY MUSIC, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| LORENZO PRYOR, TRENA STEWARD, and KARLA RAY,<br><br>       Plaintiffs,<br><br>    vs.<br><br>WARNER/CHAPPELL MUSIC, INC.; ERIK FRANCIS SCHRODY a/k/a EVERLAST; WARNER BROS. RECORDS, INC.; RHINO ENTERTAINMENT COMPANY; TOMMY BOY ENTERTAINMENT, LLC, formerly known as TOMMY BOY RECORDS; WEA INTERNATIONAL, INC.; WARNER BROS. ENTERTAINMENT, INC.; T-BOY MUSIC, LLC; and DOES 1-10, inclusive,<br><br>       Defendants. | Case No. CV 13-04344 RSWL AJWx<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE<br><br>[Fed. R. Civ. P. 12(b)(6) & (f)(2)]<br><br>Date: April 22, 2014<br>Time: 10:00 a.m.<br><br>Courtroom of the Honorable<br>Ronald S.W. Lew<br>United States District Judge |

## **TABLE OF CONTENTS**

1. MEMORANDUM OF POINTS AND AUTHORITIES ........................................1

  (a) Summary of Argument ................................................................1

  (b) Summary of the Fourth Amended Complaint's Allegations ...........................2

    (1) The 1974 *Bumpin* Musical Composition and Sound Recording..................2

    (2) Caesar's Music's 1998 Sample Agreement with T-Boy Music, Authorizing the Use of the *Bumpin* Musical Composition ........................3

    (3) In 1998, Defendant Schrody Records His Song, *Get Down*, Allegedly Including a Sample – Which Plaintiffs Allege Is Unrecognizable to a Reasonable Person – of the Words "Get Down" ..........................................4

    (4) Plaintiffs' New Allegation that T-Boy Music Only Licensed Rights in the *Bumpin* Composition After the Creation of the *Get Down* Recording with the Alleged Half-Second Sample ........................................5

    (5) After David Pryor's Death in 2006, Plaintiffs and Pryor's Other Heirs Succeeded to His Rights and Obtained by Assignment the Rights of Caesar's Music and Private Stock ........................................6

    (6) The Two Claims that Plaintiffs Assert in their Fourth Amended Complaint ........................................7

2. THE MOTION TO DISMISS IS PROPERLY GRANTED ..................................7

  (a) The Standards Governing this Motion ................................................7

  (b) The Alleged Half-Second Sample of Two Spoken Words Is Not Infringing ....8

    (1) The Two-Word Snippet Is Not Original ........................................8

    (2) Alternatively, the Alleged Half-Second Sample of Two Words Is De Minimis ........................................10

      *(i) The Standard for a De Minimis Use* ........................................10

      *(ii) Sound Recordings Are Not Exempt from the Requirement that the Plaintiffs Prove Copying of a Substantial Portion of their Work* ..........10

i

*(iii) As a Matter of Law, the Alleged Half-Second Sample of Two Spoken Words from a Seven-Minute Song is De Minimis* ....................13

(c) Plaintiffs' Fourth Amended Complaint Also Fails to Cure the Defect in the    Second Claim for Contributory Infringement of the *Bumpin* Sound Recording Copyright ................................................................................15

(1) The Elements of a Claim for Contributory Infringement of Copyright......16

(2) Plaintiffs' Contributory Infringement Claim Is defeated by Plaintiffs' New Allegation that the Infringement Occurred *Before* T-Boy Music Issued a License to the Other Defendants ....................................................16

(3) Alternatively, Plaintiffs Again Fail to Plead that T-Boy Music Knowingly Caused or Induced the Alleged Infringement ..........................17

3. IF THE CASE IS NOT DISMISSED IN ITS ENTIRETY, THE MOTION TO STRIKE IS PROPERLY GRANTED................................................................19

(a) The Standards Applicable to the Motion to Strike...........................................19

(b) Plaintiffs' Continued References to Warner/Chappell as a Defendant are Properly Stricken ...............................................................................................20

4. CONCLUSION ......................................................................................................20

APPENDIX

*VMG Salsoul, LLC v. Ciccone*, U.S. Dist. Ct. Case No. CV 12-05967 BRO (CWx) (C.D. Cal. November 18, 2013)

1

## **TABLE OF AUTHORITIES**

2 **Cases**

3 *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .......... 7, 19

4 *Aulson v. Blanchard*, 83 F.3d 1 (1st Cir. 1996)..............................................9

5 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955,

6    167 L.Ed.2d 929 (2007) ................................................. 7, 14

7 *Bianchi v. Kincheloe*, 714 F. Supp. 443 (E.D. Wash. 1989) .....................................13

8 *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792 (6th Cir. 2005) ........ 11, 12

9 *Bureerong v. Uvawas*, 922 F. Supp. 1450 (C.D. Cal. 1996) ......................................19

10 *CMM Cable Rep., Inc. v. Ocean Coast Props.*, 97 F.3d 1504 (1st Cir. 1996).............8

11 *e-Cash Technologies v. Guargliardo*, 127 F. Supp. 2d 1069 (C.D. Cal. 2000)...........7

12 *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) .......................................... 16, 17

13 *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir. 1993) ..........................................19

14 *Fiest Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 111 S.Ct. 1282,

15    113 L.Ed.2d 358 (1991) ..................................................................8, 9

16 *Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986)................................................ 10, 13, 14

17 *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 ..............19

18 *Folsom v. Marsh,* 9 F.Cas. 342 (C.C.D. Mass.1841) (No. 4901)....................... 10, 13

19 *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377 (Fed. Cir. 2007)....................................8

20 *Ileto v. Glock. Inc.*, 349 F.3d 1191 (9th Cir. 2003), *cert. denied* 543 U.S. 1050,

21    125 S.Ct. 865, 160 L.Ed.2d 770 ................................................................7

22 *Narell v. Freeman*, 872 F.2d 907 (9th Cir. 1989)...............................................8

23 *Newton v. Diamond*, 204 F. Supp. 2d 1244 (C.D. Cal. 2002), *aff'd*

24    388 F.3d 1189, *cert. denied* 545 U.S. 1114, 125 S.Ct. 2905,

25    162 L.Ed.2d 294 ..........................................................................3

26 *Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2004), *cert. denied*

27    545 U.S. 1114, 125 S.Ct. 2905, 162 L.Ed.2d 2.................................. 10, 11, 13, 14

28

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007),

 *cert. denied* 553 U.S. 1079, 128 S.Ct. 2871, 171 L.Ed.2d 811 .................. 16, 17, 19

*Saregama India Ltd. v. Mosley*, 687 F. Supp. 2d 1325 (S.D. Fla. 2009)

 *aff'd*, 635 F.3d 1284 (11th Cir. 2011) ........................................................11

*TufAmerica, Inc. v. Diamond*, ___ F. Supp. 2d ___, 2013 WL 4830954

 (S.D.N.Y. Sept. 10, 2013) ................................................................ 14, 15

*United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) .................... 8, 15

*VMG Salsoul, LLC v. Ciccone*, U.S. Dist. Ct. Case No. CV 12-05967 BRO

 (CWx) (C.D. Cal. 2013) ................................................................. 9, 11, 13

*Warner Bros. Inc. v. American Broad. Cos., Inc.*, 654 F.2d 204 (2d Cir. 1981) .......12

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010)........................19

*Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022 (N.D. Cal. 2003) ................14

**Statutes**

17 U.S.C. Section 114........................................................................ 11, 12

**Other Authorities**

H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. (1976) ................................................12

**Rules**

Federal Rule of Civil Procedure 12 .................................... 1, 7, 9, 14, 15, 19

Federal Rule of Evidence 408................................................................18

**Treatises**

C.A. Wright & A.R. Miller, *Federal Practice & Procedure* (1990).........................19

N. Nimmer & D. Nimmer, *Nimmer on Copyright* (2013).............................. 9, 11, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.   INTRODUCTION

### (a)   Summary of Argument

Defendants Warner Bros. Records Inc., WEA International, Inc., Tommy Boy Music, Inc., and T-Boy Music, LLC ("T-Boy Music") respectfully submit this Memorandum in support of their Motions to dismiss and to strike pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(f)(2).

Plaintiffs claim to own the copyrights in the 1974 musical composition and sound recording titled *Bumpin' Bus Stop* ("*Bumpin*").  In their initial Complaint, plaintiffs alleged that the "music, lyrics, recorded vocal performance of David Pryor and other creative elements of Bumpin' Bus Stop are wholly original and copyrightable subject matter," and that unspecified portions of the *Bumpin* "sound recording and musical composition" were sampled in Eric Schrody's 1998 *Get Down*.  Complaint (Document 1) at 8, lines 6-9, & at 7, lines 2-9.

Plaintiffs, however, have now filed four additional versions of a complaint, abandoning the claimed infringement of the *Bumpin* musical composition copyright and limiting their claim to the alleged infringement of the *Bumpin* sound recording copyright based on the alleged copying of only two spoken words.  Plaintiffs even allege that a reasonable person would not notice the alleged sample.  As a matter of law, the two words are not original and, alternatively, the alleged copying of two words from a seven minute recording would be a de minimis, non-infringing use. *See, below* at 8-15.[1]  Accordingly, this action is properly dismissed in its entirety.

---

[1]     Defendants had intended to raise these defects by an early summary judgment motion.  However, although plaintiffs agreed in the parties' Joint Rule 26(f) Report (Document 30) to early liability expert disclosures in order to enable defendants to bring that early summary judgment motion (*id.* at 3:21-4:6, 4:25-5:1), plaintiffs have since declined to follow the agreed schedule.  Further, the parties' Joint Report – filed after some defendants answered plaintiffs' Third Amended Complaint – also confirms that plaintiffs have whittled their claim down to the alleged sampling of just two words.  *Id.* at 2:14-19.

1

If for any reason the action is not dismissed, then plaintiffs' second claim for alleged contributory infringement is properly dismissed.  In granting T-Boy Music's previous motion to dismiss the contributory infringement claim, the Court granted plaintiffs leave to amend to allege <u>how</u> T-Boy Music supposedly (1) knew that the *Get Down* sound recording included the alleged sample and (2) knew that T-Boy Music's license of the right to use the *Bumpin* <u>musical composition</u> would cause the other defendants to use the *Bumpin* <u>sound recording</u>.  Order granting Mtn. to Dismiss (Document 13) at 14, lines 11-19.  Plaintiffs' Fourth Amended Complaint fails to cure those defects.  While plaintiffs now allege that another defendant, the recording artist Erik Schrody, knew of the alleged sample, that does not establish <u>T-Boy Music's</u> knowledge, required by the Court's leave to amend.  Further, plaintiffs now allege that T-Boy Music licensed the use of the *Bumpin* musical composition <u>after</u> the other defendants had already created the recording with the alleged sample.  Plaintiffs' new allegation that T-Boy Music's license did not induce or cause the alleged infringement, is fatal to this claim.  Accordingly, the second claim for contributory infringement is properly dismissed, this time without leave to amend.  *See, below* at 15-19.

Finally, although plaintiffs dismissed defendant Warner/Chappell Music, Inc. ("Warner/Chappell"), plaintiffs' Fourth Amended Complaint again names Warner/Chappell as a defendant in the caption and includes Warner/Chappell in the pleading's definition of the "Defendants" who allegedly infringed.  These improper references to a dismissed defendant are properly stricken.  *See, below* at 19-20.

**(b)**     <u>Summary of the Fourth Amended Complaint's Allegations</u>

       **(1)**     **The 1974 *Bumpin* Musical Composition and Sound Recording**

Plaintiffs allege that in 1974, David Pryor wrote the musical composition *Bumpin* and recorded the performance of that composition by his band, the Play

///

2

Boys.  Fourth Amended Complaint ("4th Am. Compl.") (Document 37) at 5-6, ¶¶ 9-11.

Plaintiffs also allege that the 1974 recording of *Bumpin* was released as the two sides of a 45 vinyl single, "approximately 3:4842 minutes in length on the A-Side (Part 1) and approximately 3:1582 on the B-Side (Part 2)." *Id.* at 6, lines 16-18. Plaintiffs allege that the *Bumpin* recording, which by their allegations totals 7:04 minutes, includes David Pryor's "signature voice . . . say[ing]: 'Hey Gang, let me show you something!  It's the hottest thing and it's on its way to the top!  Step up front . . . you dig!  Get down with the Bus Stop!'" *Id.* at 6, lines 19-23; *see, also* accompanying Request for Judicial Notice & Exhibit 1 (recording of *Bumpin*).[2]

Separate copyrights apply to musical compositions and to sound recordings[3] and plaintiffs allege that in 1974 the copyright in the musical composition was registered with the Copyright Office by Caesar's Music Library ("Caesar's Music") and the copyright in the sound recording was registered by Private Stock Records. 4th Am. Compl. at 8, ¶ 15.

**(2)  Caesar's Music's 1998 Sample Agreement with T-Boy Music, Authorizing the Use of the *Bumpin* Musical Composition**

Plaintiffs allege that Caesar's Music "entered into a Sample Agreement, dated June 16, 1998, with T-Boy Music "to sample and create a derivative work based on the Composition for 'Bumpin' Bus Stop."  4th Am. Compl. at 12, lines 10-15 (emphasis added.)  This Sample Agreement applied only to the use of the *Bumpin* musical composition and <u>did not</u> purport to grant rights to use the *Bumpin* sound

---

[2]    The Court may consider the *Bumpin* sound recording because plaintiffs' amended complaint identifies and necessarily relies upon it and plaintiffs, of course, do not dispute the *Bumpin* sound recording's authenticity.  *See, below* at 7-8.

[3]    "Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights." *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1249 (C.D. Cal. 2002), *aff'd* 388 F.3d 1189, *cert. denied* 545 U.S. 1114, 125 S.Ct. 2905, 162 L.Ed.2d 294; Order granting Mtn. to Dismiss at 11-12.

3

1   recording.  *See, e.g., id.* at 12, lines 16-19 (sampling the *Bumpin* sound recording

2   "required . . . a separate license to use the sound recording (not just the musical

3   composition)" (parenthetical in original)).

> **(3)   In 1998, Defendant Schrody Records His Song, *Get Down*,**
>
> **Allegedly Including a Sample – Which Plaintiffs Allege Is**
>
> **Unrecognizable to a Reasonable Person – of the Words "Get**
>
> **Down"**

8      Plaintiffs allege that "Everlast" is the professional name of defendant Erik

9   Schrody, "an American singer and songwriter [and a] three-time Grammy award-

10   winning producer and recording artist, having been affiliated with some of the best

11   selling music in history."  4th Am. Compl. at 4, ¶ 7(a).

12      Schrody both performed on and served as the Executive Producer of the 1998

13   recording of his song, *Get Down*.  *Id.* at 12, line 27, to 13, line 1, & at 21, lines 24-

14   25.  Although plaintiffs initially alleged that this 1998 recording copies the *Bumpin*

15   musical composition, they have since abandoned that claim.  *See, e.g.,* Stip. to Order

16   granting leave to file Third Am. Compl. (Document 14) at 1, lines 14-24 (agreeing

17   to omit "claim for infringement of a composition copyright" from amended

18   pleading) & Order (Document 15) at 2, ¶ 1(a) (granting plaintiffs leave to file an

19   amended complaint that, *inter alia*, "omits (i) the second claim for infringement of a

20   musical composition copyright, (ii) the portions of the third claim for contributory

21   infringement that relate to the alleged infringement of a musical composition

22   copyright, . . .").

23      Instead, Plaintiffs allege that the 1998 *Get Down* recording infringes the

24   claimed copyright in the seven-minute *Bumpin* sound recording.  And, specifically,

25   plaintiffs claim that the 1998 recording copies the words "get down" from Pryor's

26   statement "Hey Gang, let me show you something!  It's the hottest thing and it's on

27   its way to the top!  Step up front . . . you dig!  Get down with the Bus Stop!'"  4th

28   ///

4

1  Am. Compl at 6, ¶ 12, & at 15, lines 5-6 ("'Get Down' samples the recorded voice
2  of David Pryor, exclaiming 'Get Down' . . .").

3      The allegedly-sampled two words are a half second of the *Bumpin* sound
4  recording.  Exhibit 1.  <u>Indeed, plaintiffs also allege that "[a]bsent it being brought to</u>
5  <u>his or attention, a reasonable person would not have discovered on their own the</u>
6  <u>short-phrase vocal sample of Pryor saying 'Get Down' in the [allegedly] infringing</u>
7  <u>record."</u>  *Id.* at 17, lines 14-17.

8          **(4)     Plaintiffs' New Allegation that T-Boy Music Only Licensed**
9                **Rights in the *Bumpin* Composition <u>After</u> the Creation of the**
10               ***Get Down* Recording with the Alleged Half-Second Sample**

11     Having had their claim against T-Boy Music for contributory infringement
12  dismissed with leave to amend, plaintiffs now also assert this claim against Erik
13  Schrody.  4th Am. Compl. at 20, lines 13-15.[4]  Plaintiffs allege, in conclusory
14  fashion, that Schrody and T-Boy Music, by licensing the right to use the *Bumpin*
15  composition, caused the other defendants to create and exploit the *Get Down*
16  recording with the alleged sample, and knew or had reason to know of the alleged
17  sample.  *Id.* at 20, lines 23-27, at 21, lines 10-13, & at 21, lines 14-16.  The Court
18  has already found plaintiffs' allegations insufficient as to T-Boy Music.  Order
19  granting Mtn. to Dismiss at 13-14.

20     Plaintiffs now add that Schrody "was the Executive Producer for" *Get Down*
21  "and, therefore, knew that the sampled vocal performance was not his but rather the
22  voice of David Pryor."  4th Am. Compl. at 21, lines 25-27.  But, that allegation does
23  not establish that <u>T-Boy Music</u> knew of a half-second alleged sample, which
24  plaintiffs affirmatively allege no reasonable person would have noticed.  *Id.* at 17,
25  lines 14-17.

26  _____
[4]     Plaintiffs' inclusion of Erik Schrody as an additional defendant on this claim
27  exceeds the scope of the leave granted by the Court, namely to try again to plead a
    claim for contributory infringement against T-Boy Music.  Order granting Mtn. to
28  Dismiss at 13-14.

1        Plaintiffs also now allege that "[p]rior to filing this action" plaintiffs sent a

2  cease-and-desist letter to "defendants' parent company, Warner Music Group,"

3  which supposedly "acknowledged" there was no license to use the *Bumpin* sound

4  recording "and offered to settle the matter."  *Id.* at 22, lines 17-22, 25-28.  Plaintiffs

5  also allege that neither Warner Music Group nor "Schrody's manager" disputed

6  plaintiffs' claim.  Even if these allegations were properly considered – and they are

7  not, *see, below* at 18 – they do not establish that T-Boy Music knew of the alleged

8  sample and knowingly induced its inclusion in *Get Down*.

9        Importantly, plaintiffs now raise that the Sample Agreement specifically

10  identifies the already-existing *Get Down* recording and, therefore, that allegedly

11  "infringing recording" was created before T-Boy Music entered into the Sample

12  Agreement and then licensed to the other defendants the right to use the

13  composition.  *Id.* at 21, line 27, to 22, line 6.  This allegation directly contradicts

14  plaintiffs' prior and conclusory allegation that T-Boy Music's license somehow

15  caused the other defendants to create the supposedly-infringing *Get Down* recording.

16       **(5)**    **After David Pryor's Death in 2006, Plaintiffs and Pryor's**

17                      **Other Heirs Succeeded to His Rights and Obtained by**

18                      **Assignment the Rights of Caesar's Music and Private Stock**

19        Plaintiffs allege that David Pryor died in 2006 and that in 2011 his rights in

20  *Bumpin* were distributed in probate to plaintiffs Lorenzo Pryor, Trena Steward and

21  Karla Ray, and two other "family members," non-parties Sheila Hines and Margaret

22  Pryor.  4th Am. Compl. at 9-10, ¶¶ 18-20.

23        Plaintiffs also allege that, although they dispute that Caesar's Music and

24  Private Stock Records had any rights in *Bumpin*, plaintiffs obtained assignments of

25  rights from those companies in 2011.  *Id.* at 10-11, ¶¶ 21-22.

26  ///

27  ///

28  ///

6

**(6)** **The Two Claims that Plaintiffs Assert in their Fourth Amended Complaint**

Plaintiffs' Fourth Amended Complaint asserts the following two claims:

- A first claim for infringement of the *Bumpin* sound recording copyright, asserted against defendants TB Entertainment, Warner Bros. Records, WEA International, Rhino Entertainment Co. and, now, Schrody[5] (4th Am. Compl. at 15-20); and

- A second claim for contributory infringement of the sound recording copyright, asserted against T-Boy Music (*id.* at 21-23).

## 2. THE MOTION TO DISMISS IS PROPERLY GRANTED

### (a) The Standards Governing this Motion

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of the claims asserted in the complaint." *Ileto v. Glock. Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003), *cert. denied* 543 U.S. 1050, 125 S.Ct. 865, 160 L.Ed.2d 770. While "[t]he Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them" (*eCash Technologies v. Guargliardo*, 127 F. Supp. 2d 1069, 1074 (C.D. Cal. 2000)), the plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *quoting Twombly*, 550 U.S. at 570.

Further, on a Rule 12(b)(6) motion to dismiss the Court "may also consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint

---

[5] Although plaintiffs were granted leave to amend only their second claim, they have also changed their first claim to identify Schrody as an additional defendant on that claim. *Compare* Third Am. Compl. (Document 16) at 15, line 2, *with* 4th. Am. Compl. at 14, line 18.

7

1  refers to the document; (2) the document is central to the plaintiff's claim; and (3) no

2  party questions the authenticity of the document."   *United States v. Corinthian*

3  *Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

4      **(b)**    **The Alleged Half-Second Sample of Two Spoken Words Is Not**

5              **Infringing**

6          After <u>five complaints</u>, plaintiffs have painted themselves into a corner from

7  which they cannot escape: their entire case rests on the contention that two words,

8  which they allege are not recognizable to a reasonable person, and no music, were

9  supposedly sampled from a seven-minute song.   The half-second snippet of two

10 words is not original and, alternatively, the alleged use is de minimis.

11         **(1)**    **The Two-Word Snippet Is Not Original**

12         A copyright claim requires the "copying of constituent elements of the work

13 <u>which are original</u>."   *Fiest Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340,

14 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) (emphasis added).   "Original, as the

15 term is used in copyright, means only that the work was independently created by

16 the author (as opposed to copied from other works), and that it possesses at least

17 some minimal degree of creativity."   *Fiest Publ'ns*, 499 U.S. at 345.

18         Here, however, plaintiffs do not allege copying of *Bumpin*'s melody, sung

19 lyrics or other musical elements.   Instead, plaintiffs' case has been reduced to the

20 alleged copying <u>of two spoken words</u>.

21         "It is axiomatic that copyright law denies protection to 'fragmentary words

22 and phrases' . . . on the grounds that these materials do not exhibit the minimal level

23 of creativity necessary to warrant copyright protection."   *Hutchins v. Zoll Med.*

24 *Corp.*, 492 F.3d 1377, 1384 (Fed. Cir. 2007), *quoting CMM Cable Rep., Inc. v.*

25 *Ocean Coast Props.,* 97 F.3d 1504, 1519-20 (1st Cir. 1996) (phrases such as "call in,

26 clock in, and win" not protected by copyright); *Narell v. Freeman*, 872 F.2d 907,

27 911 (9th Cir. 1989) (copying of phrases from book was not infringing where

28 "borrowings did not take a 'sequence of creative expression,' as opposed to an

ordinary phrase"); 1 N. Nimmer & D. Nimmer, *Nimmer on Copyright* § 2.01[B] (2013) ("The refusal to protect short phrases applies *a fortiori* to one or two words").

This conclusion is not altered by the fact that plaintiffs claim copying of two words from a sound recording. The sound recording copyright is still a copyright and, accordingly, protects only "constituent elements" that possess "some minimal degree of creativity." *Fiest Publ'ns*, 499 U.S. at 345, 361. Here, the alleged sample is a half-second snippet of two words and does not possess the minimal creativity required to establish copyright. *VMG Salsoul, LLC v. Ciccone*, U.S. Dist. Ct. Case No. CV 12-05967 BRO (CWx) (C.D. Cal. November 18, 2013) at 15-16 (sound recording's allegedly-sampled chord not original)[6]; 1 *Nimmer on Copyright* § 2.10[A][2] (referring to potential originality in recording of "an aggregation of sounds" (emphasis added)).

Neither is this conclusion altered by plaintiffs' references to Pryor's "signature voice." 4th Am. Compl. at 5, lines 18-21, & at 6, lines 18-23. Despite filing five complaints, plaintiffs have never alleged any basis or explanation for this conclusory reference. Moreover, the *Bumpin* sound recording confirms that plaintiffs' assertion is hyperbole and there is nothing particularly notable or identifiable about Pryor's statements at the beginning of *Bumpin*. Exhibit 1; *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (Rule 12(b)(6)'s "deferential standard does not force [the] court to swallow the plaintiff's invective hook, line, and sinker; bald assertions . . . and the like need not be credited").

Rather than alleging the sampling of "an aggregation of sounds" (1 *Nimmer on Copyright* § 2.10[A][2]), plaintiffs allege a half-second of two spoken words was copied. Accordingly, plaintiffs' claims fail because the allegedly copied words are not original and, as a result, plaintiff has not established "copying of constituent elements of the work that are original." *Fiest Publ'ns*, 499 U.S. at 361.

///

---

[6]   A copy of the decision in *VMG Salsoul* appears in the attached Appendix.

**(2)     Alternatively, the Alleged Half-Second Sample of Two Words Is De Minimis**

Even if two words could be original, which they plainly cannot, the alleged copying of two words from *Bumpin* is de minimis.

### *(i)     The Standard for a De Minimis Use*

"[N]o legal consequences will follow from [alleged copying] unless the copying is substantial." *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004), *cert. denied* 545 U.S. 1114, 125 S.Ct. 2905, 162 L.Ed.2d 294. "Substantiality is measured by considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole . . . . This focus on the sample's relation to the plaintiff's work as a whole embodies the fundamental question in any infringement action, as expressed more than 150 years ago by Justice Story: whether 'so much is taken[ ] that the value of the original is sensibly diminished, or the labors of the original author are substantially to an injurious extent appropriated by another.'" *Id.* at 1195 (emphasis added), *quoting Folsom v. Marsh,* 9 F.Cas. 342, 348 (C.C.D. Mass.1841) (No. 4901).

A use is insubstantial or de minimis "if it is so meager and fragmentary that the average audience would not recognize the appropriation." *Newton*, 388 F.3d at 1193, *quoting Fisher v. Dees*, 794 F.2d 432, 434 n. 2 (9th Cir. 1986). That determination can be made by the Court as a matter of law. *Newton*, 388 F.3d at 1196-97.

### *(ii)     Sound Recordings Are Not Exempt from the Requirement that the Plaintiffs Prove Copying of a Substantial Portion of their Work*

As stated above, "no legal consequences will follow from [alleged copying] unless the copying is substantial." *Newton*, 388 F.3d at 1193 (emphasis added). Plaintiffs, recognizing the alleged sampling of two words cannot meet that standard, are expected to rely upon *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792

10

(6th Cir. 2005), in which the Sixth Circuit adopted a "new rule" that sound recordings are exempt from the copyright requirement of proof of <u>substantial copying</u>. *Id.* at 798, 802.  Plaintiffs' reliance on *Bridgeport* would be misplaced.

*Bridgeport*'s facts were unique.  The plaintiffs, who controlled a library of musical compositions and sound recordings, filed "nearly 500 counts against approximately 800 defendants for copyright infringement and various state law claims relating to the use of samples without permission in new rap recordings." *Id.* at 795.  "[T]he district court severed that original complaint into 476 separate actions" presenting sample claims.  *Id.*  Moreover, the alleged sampling was conceded.  *Id.*  The panel in *Bridgeport*, considering that the district court judge "has hundreds of other cases [filed by the same plaintiffs] all involving different samples from different songs, [decided that] the value of a principled bright-line rule [was] apparent." *Id.* at 802.  The "bright-line rule" adopted by the panel is that even insubstantial, trivial copying of a sound recording is actionable, thereby giving sound recordings more protection than other copyrighted works.  *Id.* at 802-04.

*Bridgeport*, however, is not the law of any other Circuit, including this one. Instead, requiring proof of <u>substantial copying</u> remains a mainstay of not only this Circuit's law, but copyright law in general (*Newton*, 388 F.3d at 1193 ("The principle that trivial copying does not constitute actionable infringement has long been a part of copyright law")), and flows from the established maxim *de minimis non curat lex* – "the law does not concern itself with trifles."  *Id.*  Because of *Bridgeport*'s unprecedented departure from these principles, *Bridgeport* has not been followed by other Courts (*see, e.g., Saregama India Ltd. v. Mosley*, 687 F. Supp. 2d 1325, 1338-41 (S.D. Fla. 2009) *aff'd*, 635 F.3d 1284 (11th Cir. 2011); *VMG Salsoul*, CV 12-05967 BRO (CWx) at 17), and has been soundly criticized by the leading treatise on copyright, *Nimmer on Copyright*.

As *Nimmer* discusses, *Bridgeport* "rests on a misapprehension of the statutory structure" because it interprets 17 U.S.C. Section 114 – which <u>limits</u> sound

recording copyrights to the replication of the sounds fixed – as somehow expanding the rights of sound recording copyrights beyond all other copyrights.  4 *Nimmer on Copyright* § 13.03[A][2][b].

In addition, *Bridgeport* relied on a "logical fallacy" when it concluded that, because sound recording copyrights do not protect against "another sound recording that consists entirely of an independent fixation of other sounds" (17 U.S.C. § 114(b)), any copying – even if de minimis – must be a violation.  4 *Nimmer on Copyright* at § 13.03[A][2][b] ("By validating entire sound-alike recordings, the quoted sentence [in § 114(b)] contains no implication that partial sound duplications are to be treated any differently from what is required by the traditional standards of copyright law").

In adopting a new rule that copying insubstantial portions of a sound recording is infringing, *Bridgeport* also ignored the 1976 Act's legislative history confirming that only substantial copying of a sound recording can be infringing.  "Congress explicitly noted in [the context of sound recordings] that 'infringement takes place whenever all or any *substantial portion* of the actual sounds that go to make up a copyrighted sound recording are reproduced in phonorecords . . . .'" *Id.*, *quoting* H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. (1976) at 106 (emphasis added by *Nimmer*).

Moreover, *Bridgeport* justified its "new rule" as a way to avoid difficult issues presented in the hundreds of cases filed by plaintiffs.  *Bridgeport*, 410 F.3d at 801-02.  But, even though in some cases "[t]he determination of the extent of similarity which will constitute a substantial and hence infringing similarity presents one of the most difficult questions in copyright law," that has never stopped the Courts from requiring proof of substantial copying.  *Warner Bros. Inc. v. American Broad. Cos., Inc.*, 654 F.2d 204, 208 (2d Cir. 1981), *quoting* 3 *Nimmer on Copyright* § 13.03(A), at 13-16.  And, *Bridgeport's* "new rule" is plainly not justified in a case such as this where the issue is not difficult at all.  *See, below* at 13-15.

1    *Bridgeport*'s new "rule has not been adopted by the Ninth Circuit" (*VMG*

2    *Salsoul*, CV 12-05967 BRO (CWx) at 17), is incorrect and is not binding on this

3    Court.   *Bianchi v. Kincheloe*, 714 F. Supp. 443, 444 (E.D. Wash. 1989) (Sixth

4    Circuit decision not binding on District Court in Ninth Circuit).   Rather, a sound

5    recording claim, like any other copyright claim, fails unless "the copying is

6    substantial." *Newton*, 388 F.3d at 1193.

7               **(iii)**    **As a Matter of Law, the Alleged Half-Second Sample of**

8                       **Two Spoken Words from a Seven-Minute Song is De**

9                       **Minimis**

10       The de minimis rule applies in this Circuit and the alleged half-second sample

11    of two words is de minimis as a matter of law.

12       Whether an alleged copying is substantial or de minimis "is measured by

13    considering the qualitative and quantitative significance of the copied portion in

14    relation to the plaintiff's work as a whole . . . ." *Newton* 388 F.3d at 1195.

15       As for the <u>quantitative significance</u> of the two words to *Bumpin* as a whole,

16    the two words are a half-second out of a recording that plaintiffs allege is 7:04

17    minutes – or 424 seconds – long.  4th Am. Compl. at 6, lines 16-18.  <u>Thus, the two</u>

18    <u>words constitute less than five thousandths of the *Bumpin* sound recording.</u>  As a

19    matter of law, five-thousandths is not a quantitatively significant portion of *Bumpin*.

20    Quantitatively, the alleged use is "meager and fragmentary . . . ." *Newton*, 388 F.3d

21    at 1193, *quoting Fisher*, 794 F.2d at 434 n. 2.

22       As for the <u>qualitative significance</u> of the two words to *Bumpin* as a whole,

23    plaintiffs do not allege <u>any music</u> from *Bumpin* was sampled.  Rather, they allege

24    only the sampling of the words "get down" from the three spoken sentences "Hey

25    Gang, let me show you something!  It's the hottest thing and it's on its way to the

26    top!  Step up front . . . you dig!  Get down with the Bus Stop!" 4th Am. Compl. at 6,

27    lines 19-23.

28    ///

As a result, plaintiffs concede that there was <u>no copying</u> of the *Bumpin* sound recording's seven minutes of sung vocals, keyboard, drums and other instruments, with an organized musical structure and melody, rhythm, chords and harmonic progressions. *Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1025 (N.D. Cal. 2003) ("it is not proper for the court to assume that the plaintiff can prove facts which he or she has not alleged"); *see, also* Exhibit 1.   Plaintiffs allege only the sampling of a "meager . . . fragment[ ]" of the seven-minute *Bumpin* recording. *Newton*, 388 F.3d at 1193, *quoting Fisher*, 794 F.2d at 434 n. 2.

And, there is no qualitative significance to "get down."  It is not the title of *Bumpin* and, instead, plaintiffs allege it is simply two words in the 30-word beginning of a seven-minute sound recording.  Plaintiffs' bare reference to Pryor's "signature voice" does not help them.  That reference is conclusory and without any explanation.  *Twombly*, 550 U.S. at 555 ("labels and conclusions" are insufficient to survive Rule 12(b)(6)). Moreover, plaintiffs expressly allege that no "reasonable person" would recognize the "short-phrase vocal" "[a]bsent it being brought to his or attention, . . . ."  4th Am. Compl. at 17, lines 14-17; *Newton*, 388 F.3d at 1193 ("use de minimis if "the average audience would not recognize the appropriation"), *quoting Fisher*, 794 F.2d at 434 n. 2.

The district court's decision in *TufAmerica, Inc. v. Diamond*, ___ F. Supp. 2d ___, 2013 WL 4830954 (S.D.N.Y. Sept. 10, 2013), is instructive.   On the defendants' Rule 12(b)(6) motion to dismiss, the court considered multiple claims of sampling of various sound recordings.   The court ruled that the alleged sample of the shouted words "say what" in one sound recording might not be de minimis as matter of law because, although a common phrase, the words were also the recording's title and occurred nine times in the recording.  2013 WL 4830954 at *11-12.  In contrast, another alleged three-second sample of the shouted words "Now I want y'all to break this down" <u>was</u> de minimis as a matter of law because the phrase was not the recording's title and appeared only once in the 6:20 minute-

14

1  long recording.   Accordingly, that sampling claim was dismissed at the pleading

2  level.  *Id.* at *16.

3        Here, the two allegedly sampled words are <u>not</u> the title of the recording and

4  are <u>not</u> repeated.  Further, here the alleged sample of two words is even less than the

5  alleged sampling of eight words that *TufAmerica* found to be de minimis.   As a

6  result, this is even a stronger case for dismissal than the claim that was dismissed in

7  *TufAmerica*.

8        Plaintiffs have abandoned their composition claim and limited their case to an

9  alleged half-second sample of two words out of a seven-minute recording.  Plaintiffs

10  even allege that a "reasonable person" would not notice the snippet unless it was

11  pointed out to him or her.  And, the insubstantial use is confirmed by the *Bumpin*

12  recording.  Exhibit 1; *Corinthian Colleges*, 655 F.3d at 999 ("unattached evidence"

13  properly considered under Rule 12(b)(6) where complaint refers to it, it is central to

14  claim and its authenticity is not disputed).   The alleged sample of two words is

15  meager and fragmentary and, accordingly, de minimis, and plaintiffs' Fourth

16  Amended Complaint is properly dismissed, without leave to amend.

17      **(c)**    <u>**Plaintiffs' Fourth Amended Complaint Also Fails to Cure the**</u>

18           <u>**Defect in the Second Claim for Contributory Infringement of the**</u>

19           <u>***Bumpin* Sound Recording Copyright**</u>

20        Because there is no infringement claim for allegedly sampling two spoken

21  words out of a seven-minute recording, plaintiffs' claims for direct and contributory

22  infringement are properly dismissed.  But if, for any reason, the Court does not

23  dismiss the entire action, plaintiffs' second claim for contributory infringement is

24  properly dismissed because plaintiffs' amendment (1) adds allegations that defeat

25  the claim and, in any event, (2) does not cure the defects noted by the Court.

26  ///

27  ///

28  ///

**(1)     The Elements of a Claim for Contributory Infringement of Copyright**

"Contributory copyright infringement is a form of secondary liability with roots in the tort-law concepts of enterprise liability and imputed intent . . . .  [A] defendant is a contributory infringer if it (1) has knowledge of a third party's infringing activity, and (2) 'induces, causes, or materially contributes to the infringing conduct.'"  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794-95 (9th Cir. 2007), *cert. denied* 553 U.S. 1079, 128 S.Ct. 2871, 171 L.Ed.2d 811, *quoting Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).

**(2)     Plaintiffs' Contributory Infringement Claim Is Defeated by Plaintiffs' New Allegation that the Infringement Occurred *Before* T-Boy Music Issued a License to the Other Defendants**

Plaintiffs' amended second claim continues to allege that in 1998 Caesar's Music licensed to T-Boy Music the right to use the *Bumpin* musical composition, and that T-Boy Music then licensed that right to the other defendants, who created and released the *Get Down* recording with the alleged sample.  4th Am. Compl. at 12-13, ¶ 25, & at 20-21, ¶ 50.  As the Court stated in dismissing this claim with leave to amend, "Plaintiffs fail to plausibly allege how Defendant TB Music knew that the directly infringing Defendants - Defendants WB Entertainment, WB Records, WEA, and Rhino - would infringe as a result of Defendant TB Music's licensing of 'Get Down.'"  Order granting Mtn. to Dismiss at 14, lines 14-19.

Plaintiffs' amendment, however, directly precludes the contributory infringement claim because plaintiffs now allege that T-Boy Music entered into the 1998 Sample Agreement and licensed rights **after** the other defendants had already created the allegedly-infringing sound recording.  4th Am. Compl. at 21, line 28, to 22, line 5 (the Sample Agreement's Exhibit A states "the Record Number, Record Label, and Configurations for the infringing 'Get Down'" recording and, thus, "[t]he infringing recording had already been manufactured" (emphasis added)).

16

1    Since plaintiffs now allege that the *Get Down* recording was already created
2  before the 1998 Sample Agreement, T-Boy Music's subsequent license could not
3  have "'induce[d], cause[d], or materially contribute[d] to the infringing conduct.'"
4  *Perfect 10*, 494 F.3d at 794-95, *quoting Ellison*, 357 F.3d at 1076.  Accordingly, for
5  this reason alone the second claim for contributory infringement is properly
6  dismissed.

7         **(3)    Alternatively, Plaintiffs Again Fail to Plead that T-Boy Music**
8                  **Knowingly Caused or Induced the Alleged Infringement**

9         Plaintiffs' new allegation that the allegedly-infringing *Get Down* recording
10  was created <u>before</u> T-Boy Music obtained the Sample Agreement and licensed rights
11  in the *Bumpin* composition to the other defendants, is fatal to plaintiffs' claim that T-
12  Boy Music's license somehow induced the alleged infringement.  But, plaintiffs'
13  claim also still fails because plaintiffs have not plausibly alleged that T-Boy Music
14  acted "with knowledge of a third party's infringement activity, . . . ."  *Perfect 10*,
15  494 F.3d at 794-95, *quoting Ellison*, 357 F.3d at 1076.

16        In granting T-Boy Music's last Motion to dismiss with leave to amend, the
17  Court stated:

18         Crucially, what Plaintiffs fail to allege is how Defendant TB Music knew
19         or had reason to know that "Get Down" included an unauthorized,
20         infringing sample of the "Bumpin' Bus Stop" sound recording.
21         Moreover, Plaintiffs fail to plausibly allege how Defendant TB Music
22         knew that the directly infringing Defendants - Defendants WB
23         Entertainment, WB Records, WEA, and Rhino - would infringe as a
24         result of Defendant TB Music's licensing of "Get Down."

25  Order granting Mtn. to Dismiss at 14, lines 11-19.  Plaintiffs' Fourth Amended
26  Complaint utterly fails to cure those defects.

27        Plaintiffs' primary amendment is to add another defendant on the claim – the
28  recording artist Erik Schrody – and allege <u>he</u> had knowledge of the alleged sample

17

because he recorded the *Get Down* recording, he served as the recording's Executive Producer and he "delivered" it to Warner Bros. Records, Tommy Boy Entertainment and Rhino Entertainment.   4th Am. Compl. at 21, lines 5-9, 14-27.   Those allegations, however, do not establish <u>T-Boy Music's</u> knowledge of the allegedly-infringing sample and <u>T-Boy Music's</u> knowledge that, if it licensed the *Bumpin* composition's use, the other defendants would infringe the *Bumpin* sound recording.

Plaintiffs also add or repeat other allegations, but none establish <u>T-Boy Music's</u> requisite knowledge.   Thus, plaintiffs add that "[p]rior to filing this action" they sent a cease-and-desist letter "to the defendants' parent company, Warner Music Group," which supposedly did not dispute plaintiffs contentions "and offered to settle the matter."   *Id.* at 22, ¶ 52.   Of course, any settlement discussions are inadmissible to prove the claimed infringement.   Fed. R. Evid. 408.   More importantly for the purposes of this Motion, however, a 2013 demand to Warner Music Group, a non-party, does not establish that in 1998 <u>T-Boy Music</u> knowingly induced an infringement.

Plaintiffs also allege that the 1998 Sample Agreement applies to the *Bumpin* musical composition and not the sound recording, and that T-Boy Music's copyright registration of the <u>musical composition</u> *Get Down* referred to the composition's inclusion of an interpolation of *Bumpin*, supposedly to somehow hide the alleged sample in the <u>sound recording</u> *Get Down*.   But, plaintiffs included these allegations in the prior complaint (Third Am. Compl. at 21, line 27, to 22, line 2) and also raised them repeatedly in plaintiffs' unsuccessful opposition to the prior Motion to dismiss. *See, e.g.,* Pltfs.' prior Oppn. (Document 24) at 1, line 24, to 2, line 1, at 4, lines 22-25, at 5, lines 25-28, 8, lines 11-14, & at 9, lines 10-14.   The Court has already concluded these allegations do not establish that T-Boy music knew of the alleged sample or knew that licensing the *Bumpin* musical composition would induce the other defendants' alleged infringement of the *Bumpin* sound recording.

///

1      Finally, plaintiffs' attempt to plausibly allege that T-Boy Music knew of the
2  alleged sample is defeated by plaintiffs' own allegation that "no reasonable person"
3  would even notice the alleged sample.  4th Am. Compl. at 17, lines 14-17.

4      Previously, plaintiffs failed to allege "sufficient factual matter" (*Iqbal*, 556
5  U.S. at 678) establishing that T-Boy Music both (1) caused or induced the alleged
6  infringement of the *Bumpin* sound recording copyright and (2) did so with
7  "knowledge of a third party's infringing activity."  *Perfect 10*, 494 F.3d at 795.
8  Plaintiffs have not cured those defects and, quite the contrary, now their own
9  allegations affirmatively negate that T-Boy Music caused the alleged infringement
10  and did so knowingly.  Accordingly, the second claim for contributory infringement
11  of plaintiffs' alleged sound recording copyright is properly dismissed, this time
12  without leave to amend.

13  **3.    IF THE CASE IS NOT DISMISSED IN ITS ENTIRETY, THE MOTION
14      TO STRIKE IS PROPERLY GRANTED**

15      If the action is not dismissed in its entirety, plaintiffs' continued references to
16  Warner/Chappell as a party-defendant are properly stricken.

17  **(a)    The Standards Applicable to the Motion to Strike**

18  "Under Federal Rule of Civil Procedure 12(f), the Court 'may order stricken
19  from any pleading . . . any redundant, immaterial, impertinent, or scandalous
20  matter.'"  *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996).
21  "Immaterial matter is that which has no essential or important relationship to the
22  claim for relief or the defenses being plead."  *Whittlestone, Inc. v. Handi-Craft Co.*,
23  618 F.3d 970, 974 (9th Cir. 2010), *quoting Fantasy, Inc. v. Fogerty*, 984 F.2d 1524,
24  1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S.
25  517, 114 S.Ct. 1023, 127 L.Ed.2d 455, *in turn quoting* 5A C.A. Wright & A.R.
26  Miller, *Federal Practice & Procedure* 706-07 (1990).  "Impertinent matter consists
27  of statements that do not pertain, and are not necessary, to the issues in question."
28  *Id.*

**(b)**   <u>**Plaintiffs' Continued References to Warner/Chappell as a**</u>
<u>**Defendant are Properly Stricken**</u>

Plaintiffs previously named Warner/Chappell as a defendant and, in response to Warner/Chappell's joinder in the last Motion to dismiss, plaintiffs stipulated to its dismissal.  Stipulation (Document 35).  And, the Court dismissed Warner/Chappell.  Order (Document 36).  While the dismissal was without prejudice, plaintiffs have not re-served Warner/Chappell.

Yet, plaintiffs' Fourth Amended Complaint lists Warner/Chappell as a defendant in the caption.  4th Am. Compl. at 1 (caption).  Plaintiffs' Fourth Amended Complaint also includes Warner/Chappell within the Fourth Amended Complaint's definition of "Defendants" (*id.* at 5, ¶ 8), and uses "Defendants" throughout the pleading and in its prayer to refer to the alleged infringers.  These references to Warner/Chappell are "immaterial" and "impertinent" because Warner/Chappell has been dismissed.  Accordingly, if the action is not dismissed in its entirety, these references to Warner/Chappell are properly stricken.

**4.**   <u>**CONCLUSION**</u>

Having now filed five complaints, plaintiffs unequivocally limit their claim to an alleged half-second sample of two spoken words, without music.  There is no copyright protection to short phrases and plaintiffs' claims for direct and contributory infringement fail because the allegedly infringed portion of *Bumpin* is not original.  Alternatively, the alleged sampling of two words out of a seven-minute recording is meager and fragmentary and, accordingly, de minimis.  On each of these grounds, the case is properly dismissed, without leave to amend.

If for any reason the case is not dismissed, plaintiffs' second claim for contributory infringement fails because plaintiffs now allege that the supposedly infringing sound recording was created <u>before</u> the 1998 Sample Agreement and T-Boy Music's license of the right to use the *Bumpin* composition to the other defendants.  As a result, plaintiffs' new allegation establishes that T-Boy Music did

1   not induce the alleged infringement.  Alternatively, the second claim fails because

2   plaintiffs still do not include plausible allegations establishing that T-Boy Music

3   knew of the allegedly infringement sample and knew that licensing the *Bumpin*

4   *musical composition* would somehow cause the infringement of the *Bumpin* sound

5   recording.  On each of these grounds, the second claim is properly dismissed, this

6   time without leave to amend.

7          Finally, plaintiffs continue to name Warner/Chappell as a defendant in the

8   caption and as a "Defendant" in the body of their pleading, even though they

9   dismissed Warner/Chappell from the case.  Accordingly, if the action is not

10  dismissed in its entirety, the references to Warner/Chappell are properly stricken.

11                                          Respectfully submitted,

12  Dated: March 25, 2014                    _____/s/ Peter J. Anderson_____
                                             Peter J. Anderson, Esq.
13                                           LAW OFFICES OF PETER J. ANDERSON
                                             A Professional Corporation
14                                           Attorney for Defendants
                                             WARNER BROS. RECORDS INC.,
15                                           WEA INTERNATIONAL, INC.,
                                             TOMMY BOY MUSIC, INC.,
16                                           and T-BOY MUSIC, LLC

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7                                    <u>APPENDIX</u>
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

Present: The Honorable    **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**       (IN CHAMBERS)

# ORDER RE

> **1. Ms. Ciccone, WB Music Corporation, and WEBO Girl Publishing Inc.'s Motion for Summary Judgment [45]**
> **2. Lexor Music Inc. And Shep Pettibone's Amended Motion for Summary Judgment [46][67]**
> **3. Warner Music Group and Warner Bros. Records Inc.'s Joinder in Motion for Summary Judgment [105]**

Pending before the Court is a Motion for Summary Judgment filed by Defendants Madonna Louise Ciccone, WB Music Corporation and WEBO Girl Publishing, Inc. (Dkt. No. 45); an Amended Motion for Summary Judgment filed by Defendants Lexor Music Inc. and Shep Pettibone (Dkt. Nos. 46, 67); and a Joinder in Defendant Lexor Music Inc. and Shep Pettibone's Motion for Summary Judgment, or in the Alternative Partial Summary Judgment filed by Warner Music Group and Warner Bros. Records Inc. (Dkt. No. 105.) While there are disputed factual issues in this case, those issues are not material to the Court's decision.

In short, Plaintiff alleges copyright infringement for the appropriation of a single horn stab ("Horn Hit") from Plaintiff's work, *Love Break*. The Horn Hit is a single chord that is played eleven times in Defendants' work, *Vogue*.[1] The Court finds neither the

---

[1]The Complaint and the FAC allege that the "horns and strings" were infringed. In its Opposition, Plaintiff streamlines the claim to allege copyright infringement of only the Horn Hit used throughout *Love Break* in the commercial version of *Vogue*. (Dkt. No. 111 at 6.) Plaintiff's expert opines that the Horn Hit in *Vogue* could only have been sampled from *Love Break*. (Dkt. No. 107-1, Stewart Op. ¶ 30).

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

chord nor the Horn Hit sound sufficiently original to merit copyright protection. Even if the alleged appropriation was subject to copyright protection, the Court finds that any copying was *de minimis*. For the following reasons, Defendants' Motions for Summary Judgment are **GRANTED**.

## I. BACKGROUND

### A. The Parties

Plaintiff VMG Salsoul ("Plaintiff" or "VMG") is a limited liability company. (Dkt. No. 67-9 at 2.) Verse Music Group ("Verse") owns VMG. Verse was founded in part by Curt Frasca ("Mr. Frasca"), Plaintiff's Chief Executive Officer ("CEO"). (Dkt. No. 76, Frasca Decl. ¶ 1.) The former Vice President of Verse is Tony Shimkin ("Mr. Shimkin"). (Dk. No. 67-9 at 2.)

Defendant Shep Pettibone ("Mr. Pettibone") wrote and produced the musical composition and sound recording that embodied Madonna Louise Ciccone's ("Ms. Ciccone") performance of *Vogue*. (Dkt. No. 67-9 at 3.)

The remaining Defendants are: Defendant Warner Music Group, which administers the *Vogue* sound recordings; Defendant Warner Bros. Records Inc., which also administers the *Vogue* sound recordings; Defendant WB Music Corporation, which owns and administers the *Vogue* musical composition; Defendant Blue Disque Music Company Inc., which is currently non-existent; WEBO Girl Publishing Inc., which is Ms. Ciccone's music publishing company; and Lexor Music Inc., which is Mr. Pettibone's music publishing company (collectively "Defendants"). (Dkt. No. 67-9 at 3.)

### B. The Creation of *Love Break*

In 1982 or 1983, Plaintiff's predecessor hired Mr. Pettibone to create remixes using old master tracks from the Salsoul Record label. (Dkt. No. 72 at 18.) For one particular project, Mr. Pettibone remixed *Chicago Bus Stop* to create *Love Break*. (Dkt. No. 72 at 18.) According to Plaintiff, Mr. Pettibone was hired under a work for hire agreement, which would deprive him of ownership rights in the work. (Dkt. No. 72 at 9.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|----------|----------------------|------|-------------------|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

## C. The Creation of *Vogue*

Plaintiff's CEO, Mr. Frasca, and former Vice President, Mr. Shimkin were involved in the creation of *Vogue* and the *Vogue* club remixes. Mr. Frasca worked as an assistant engineer on the original *Vogue*. (Dkt. No. 67-8, SOF ¶ 85.) He also worked alongside Mr. Shimkin and Mr. Pettibone as an assistant engineer on the *Vogue* post production remixes. (Dkt. No. 67-8, SOF ¶ 85.) According to Mr. Frasca, he "had no authority over the creative process of *Vogue* or any other recording for which [he] provided [his] services as an assistant engineer." (Dkt. No. 76, Frasca Decl. ¶ 8.) Mr. Frasca's role as an assistant engineer required him to "set up gear, assist the session engineer, align multi-track machines, change the reels of tape, patch in outboard gear as requested, set up outboard gear, keyboards, samplers, turntables, take session notes, order food, break down and clean session." (Dkt. No. 76, Frasca Decl. ¶ 6.)

Though not credited on *Vogue*, Mr. Shimkin was indirectly involved in the writing of the original *Vogue*.[2] (Dkt. No. 73, Shimkin Depo. 27:21-28:14.) Mr. Shimkin testified he was "together with [Mr. Pettibone] in the writing of [*Vogue*], so to speak, in the production of [*Vogue*], the recording of [*Vogue*] and directing of programmers and engineers." (Dkt. No. 73, Shimkin Depo. 24:20-25:2.) Both Mr. Frasca and Mr. Shimkin received credit for the club remixes. (Dkt. No. 67-8, SOF ¶ 85.).

---

[2] Q: Other than being a sounding board for [Mr. Pettibone] and asking your opinion, were you involved, yes or no, in the writing or creation of the original song *Vogue*, not the remixes that came after, the original song *Vogue*?

A. Yeah, indirectly, yes, I would say yes, indirectly.

Q. What do you mean by "indirectly"?

A. I didn't play the parts myself, and neither did [Mr. Pettibone]. We had programmers who were hired to do that, and keyboard players who were hired to do that. But we would direct them, so I believe I would direct them sometimes and give them advice on what they played and say, that was good, or it should be this or it should be that, so I think there were creative decisions I made. (Dkt. No. 73, Shimkin Depo. 27:21-28:14.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|----------|------------------------|------|-------------------|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

## D. The Acquisition of the Salsoul Catalog

Mr. Frasca convinced Plaintiff's private equity group to acquire the copyrights to the Salsoul catalog, which contained compositions and sound recordings that had been released on the Salsoul Record label. (Dkt. No. 67-2, Frasca Depo. 70:18-25.) Though "[t]he decision to pursue the copyright claims was not solely [his] to make," Mr. Frasca informed the corporate board that there was potential to "make money off the purchase of the Salsoul catalog [by] going after sample claims." (Dkt. No. 67-2, Frasca Depo. 70:18-25.)

In February 2011, Plaintiff acquired the Salsoul catalog of copyrights from Bethlehem Music Co. Inc. (Dkt. No. 76, Frasca Decl. ¶ 4.) This included the copyrights to the sound recordings and compositions of Vincent Montana's *Chicago Bus Stop (Ooh, I Love It)*, Copyright Registration Nos. EP 354406 and N27725. (Dkt. No. 96 ¶ 14; Dkt. No. 76, Frasca Decl. ¶ 5.) Plaintiff contends that they also own all rights to the remix of *Chicago Bus Stop*, entitled *Ooh, I Love It (Love Break)* ("*Love Break*"). (Dkt. No. 96 ¶ 14; Dkt. No. 76, Frasca Decl. ¶ 5.) On the theory of derivative works, Plaintiff contends its Copyright Registration for the sound recording of *Chicago Bus Stop* extends to *Love Break*. (Dkt. No. 96 ¶ 15.)

## E. The Dispute

Plaintiff alleges Mr. Pettibone sampled the Horn Hit from *Love Break*'s instrumental version. (Dkt. No. 75-1, Stewart Op. at 14.) Plaintiff's expert, Dr. Alexander Stewart ("Dr. Stewart"), opines the Horn Hit was sampled at 3:35 and 3:39 of *Love Break*.[3] (Dkt. No. 75-1, Stewart Op. at 14.) Allegedly, the Horn Hit was

---

[3] Plaintiff's Opposition argues that the Horn Hit is derived from *Chicago Bus Stop*. Plaintiff collectively refers to *Chicago Bus Stop* and *Love Break* as "*Love Break*," and argues the qualitative and quantitative importance of the Horn Hit to both works. (*See* Dkt. No. 111.) The Court will confine its discussion of the Horn Hit to the one played in *Love Break*'s instrumental version for two reasons. First, it is undisputed that Mr. Pettibone altered the Horn Hit in *Chicago Bus Stop* when he created *Love Break*. (Dkt. No. 75-1, Stewart Op. at 24.) Second, Plaintiff's expert, Dr. Stewart, testified that the Horn Hit only could have been sampled from the instrumental version of *Love Break* (7:46). (Dkt. No. 67-6, Stewart Depo. 123:4-126:8; Dkt. No. 75-1, Stewart Op. at 14.) Dr. Stewart admits there was no copying

---

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|----------|------------------------|------|-------------------|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

appropriated without permission and utilized in the creation and production of *Vogue* in 1989. (Dkt. No. 75-1, Stewart Op. at 14.) Plaintiff has streamlined its claim to only allege copyright infringement of the Horn Hit used throughout *Love Break*. (Dkt. No. 111 at 7.) Initially, Plaintiff also alleged potential copyright infringement of the strings, conga rhythm, vibraslap and chant. Dr. Alexander also discusses these elements in his expert opinion. (*See* Dkt. No. 107-1, Stewart Op. at 34.)

Plaintiff alleges that the remaining defendants published, manufactured, distributed, sold and licensed copies of *Vogue*, as well as its remixes, extended and rearranged versions, incorporating substantial portions of *Love Break*. (Dkt. No. 96 ¶ 25.)

### F. Procedural History

On both July 18, 2011 and February 16, 2012, Plaintiff provided a Notice of Copyright Infringement to Ms. Ciccone, Mr. Pettibone, WB Music Corporation, Blue Disque Music Company Inc., WEBO Girl Publishing Inc., and Lexor Music Inc. (Dkt. No. 96 ¶ 23.) Despite the Notice, Defendants continued to use and sell the sound recording of *Vogue*. (Dkt. No. 96 ¶ 23.) Notably, Ms. Ciccone performed *Vogue* at the half-time show of the Super Bowl on February 5, 2012. (Dkt. No. 96 ¶ 22.) Plaintiff filed its Complaint against Defendants on July 11, 2012 alleging the deliberate and unauthorized use of its sound recording and composition copyrights of the song *Love Break*. (Dkt. No. 1.)

On September 6, 2012, Mr. Pettibone filed an answer on behalf of all Defendants. (Dkt. No. 10.) On October 9, 2012, Mr. Pettibone filed a motion to dismiss the Complaint on behalf of Defendants pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 18.) Defendants argued for dismissal of the Complaint for failure to state a claim. Defendants argued that the alleged copying, if any, was *de minimis*. (Dkt. No. 29 at 3-4.) Judge Stephen V. Wilson denied the motion to dismiss, reasoning that Defendants' objections would be more appropriately dealt with in a motion for summary

if Defendants did not have access to the instrumental version of *Love Break* or the underlying creation files. (Dkt. No. 67-6, Stewart Depo. at 123:4-126:8.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

Judgment.[4] (Dkt. No. 29.)

On May 6, 2013, Defendants Ms. Ciccone, WB Music Corporation, and WEBO Girl Publishing filed a Motion for Summary Judgment. (Dkt. No. 45.) On May 6, 2013, Defendant Pettibone and Lexor Music, Inc. filed a Motion for Summary Judgment. (Dkt. No. 46.)

On May 20, 2013 Plaintiff filed a Motion for Leave to Amend the Complaint. (Dkt. No. 56.) On June 11, 2013, Defendant Pettibone and Defendant Lexor Music Inc. filed an Amended Motion for Summary Judgment. (Dkt. No. 67.) On June 13, 2013, Defendants Ms. Ciccone, WB Music Corporation, WEBO Girl Publishing Inc. filed a Joinder in the Amended Motion for Summary Judgment. (Dkt. No. 70.) On June 21, 2013, Plaintiff filed a Memorandum in Opposition to the Motion for Summary Judgment. (Dkt. No. 72.) On July 11, 2013, the Court granted Plaintiff Leave to Amend. (Dkt. No. 95.) On July 12, 2013, Plaintiff filed a First Amended Complaint ("FAC"). (Dkt. No. 96.) On July 12, 2013, Plaintiff filed the FAC, adding Warner Music Group and Warner Music Records Inc. as Defendants. (*See* Dkt. No. 96.) On August 5, 2013, Defendants Warner Music Group and Warner Bros. Records Inc. filed a Motion for Joinder in the Amended Motion for Summary Judgment filed by Mr. Pettibone and Lexor Music Inc. (Dkt. No. 105.)

## II. LEGAL STANDARD

Summary judgment is appropriate when, after adequate discovery, the evidence demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A disputed fact is material where its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Id.* A court may consider the pleadings, discovery, and disclosure materials, as well as any affidavits on file. Fed. R. Civ. P. 56(c)(2). Where the moving party's version of

---

[4] According to Judge Wilson, "Plaintiff's expert indicated that the sampled parts 'consist of a single chord,' or 'hit,' and a chord sounded twice, or double 'hit.' Thus, at its core, Plaintiff's allegation of copyright infringement centers on a *single* chord." (Dkt. No. 29 at 5 n.4.) Plaintiff had reduced their original claims from horns, strings, and percussion to focus only on the horns.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

events differs from the non-moving party's version, a court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party may satisfy that burden by showing "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

Once the moving party has met its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 587. Only genuine disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (finding that the non-moving party must present specific evidence from which a reasonable jury could return a verdict in its favor). A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Although a court may rely on materials in the record that neither party cited, it need only consider cited materials. Fed. R. Civ. P. 56(c)(3). Therefore, a court may properly rely on the non-moving party to specifically identify the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

Finally, the evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|----------|------------------------|------|-------------------|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

## III. EVIDENTIARY OBJECTIONS

As a preliminary matter, the Court will discuss the Parties' evidentiary objections. Mr. Pettibone and Lexor object to the declaration of Ken Cayre ("Mr. Cayre") submitted in Opposition to the Motion for Summary Judgment. (Dkt. No. 77-3.) According to Defendants, Plaintiff purposefully did not disclose Mr. Cayre as a witness, in violation of Rule 26 of the Federal Rules of Civil Procedure. (Dkt. No. 77-3 at 1.) Plaintiff's Rule 30(b)(6) witness, James Drake, testified that Plaintiff had absolutely no evidence or knowledge of when the instrumental version of *Love Break* was released. (Dkt. No. 77-2, SSOF ¶ 12.) This information has subsequently been offered by Mr. Cayre's declaration. Defendants argue Mr. Cayre was in communication with Plaintiff at the time of the 30(b)(6) deposition, but Plaintiff chose not to disclose this information. (Dkt. No. 77-3 at 1.)  Defendants claim prejudice and seek preclusion of Mr. Cayre's declaration.  (Dkt. 77-3.)  Evidence preclusion is appropriate for failure to comply with disclosure requirements unless the nondisclosure is "substantially justified" or harmless.  Fed.R.Civ.P 37(c)(1).

Mr. Cayre states "[b]oth the composition and the sound recording were duly registered with the United States Copyright Office." Much of what he testifies regards the circumstances of the recording for *Chicago Bus Stop*, and the pay and employment arrangement with Mr. Pettibone when he created *Love Break*.   As detailed below, the Court finds that the chord is unoriginal, and is too *de minimis* to make Mr. Pettibone liable for copyright infringement. Thus, the declaration is not relevant.  Therefore in the context of this motion, Mr. Cayre's declaration is harmless.

Plaintiff objects to the expert reports of Dr. Jason King (Dkt. No. 67-4), Dr. Gage Averill ("Dr. Averill") (Dkt. No. 67-4), and Paul Geluso ("Mr. Geluso") (Dkt. No. 67-6), arguing they are inadmissible for lack of signature "under penalty of perjury." (Dkt. No. 77-3.) The Court overrules those objections. Expert reports submitted pursuant to Rule 26 constitute proper evidence to support a motion for summary judgment.

Plaintiff also objects to the admission of printouts from the Internet ("Internet Articles"). The Court did not rely on the documents challenged in making this decision. However, the Court notes that the Internet Articles have been properly authenticated by Paul Duvall. It is therefore unnecessary to discuss their admissibility. (*See* Dkt. No. 67-1

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|----------|----------------------|------|-------------------|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

¶¶ 13, 25.) Plaintiff makes other objections to portions of declarations that it states constitute improper legal argument. (*See* Dkts. No. 76-1, 108.) The Court has not relied upon these bare legal assertions in rendering its decision. Therefore it is unnecessary to discuss their admissibility.

## IV. DISCUSSION

In order to prove copyright infringement, Plaintiff must demonstrate the "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Defendant seeks summary judgment on Plaintiff's sole count of copyright infringement for the appropriation of *Love Break*'s Horn Hit in both the musical composition and sound recording of *Vogue*. The Court finds that the alleged appropriation is not subject to copyright protection as it lacks originality. Even if copyrightable, the alleged copying is *de minimis*.

## A. Ownership of a Copyright

Plaintiff presents a Copyright Registration for *Chicago Bus Stop*, which creates a rebuttable "presumption of validity." *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997). Defendants and Plaintiff disagree about whether Mr. Pettibone has an ownership interest in *Love Break*, the remix of *Chicago Bus Stop*. Ownership would render claims against Mr. Pettibone for copyright infringement futile. It is unnecessary to engage in a discussion of whether *Love Break* is a derivative work of *Chicago Bus Stop*,[5] or whether Mr. Pettibone has an ownership interest in *Love*

---

[5] According to Plaintiff, *Love Break* is a derivative work of *Chicago Bus Stop*. Plaintiff submitted a "chain of title" to the sound recording of *Chicago Bus Stop*. Plaintiff argues that utilizing the Horn Hit from *Love Break* is essentially using the Horn Hit from *Chicago Bus Stop*. Pursuant to the Copyright Act, 17 U.S.C. § 101, the right to create and sell derivative works is an exclusive right reserved to the copyright owner. 17 U.S.C. § 101 (2010). "The aspects of a derivative work added by the derivative author are that author's property, but the element drawn from the pre-existing work remains on grant from the owner of the pre-existing work." *Stewart v. Abend*, 495 U.S. 207, 223 (1990). Therefore, Plaintiff argues that the use of the Horn Hit from *Love Break* requires permission from the Copyright Owner.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

*Break*.[6] The Court finds the Horn Hit is not sufficiently original to be a copyrightable element of the works.

While a valid certificate of registration with the copyright office entitles Plaintiff to a presumption of originality, Defendants may overcome this presumption by demonstrating that the Horn Hit is not original. *Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004). "[N]ot every element of a song is *per se* protected." *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1253 (C.D. Cal. 2002) *aff'd*, 349 F.3d 591 (9th Cir. 2003) *opinion amended and superseded on denial of reh'g*, 388 F.3d 1189 (9th Cir. 2004) and *aff'd*, 388 F.3d 1189 (9th Cir. 2004). Copyright protection extends only to those components of the work that are original and non-trivial. *Feist*, 499 U.S. at 348–51. The Ninth Circuit has instructed courts assessing the originality of musical elements to be "'mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently appear in various compositions, especially in popular music." *Newton*, 204 F. Supp. 2d at 1253 (quoting *Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2d Cir.1988)).

## 1. Lack of Originality

The Horn Hit is not sufficiently original to merit copyright protection. Originality is a question of law. *See Newton*, 204 F. Supp. 2d at 1253-54. "Many courts have found that nearly identical or more substantial samples are not susceptible to copyright protection." *Id.* at 1253; *see Jean v. Bug Music, Inc.*, No. 00 Civ 4022(DC), 2002 WL 287786 (S.D.N.Y. Feb. 27, 2002) (holding that an excerpt of a song could not be protected by plaintiff's copyright "because the sequence of the three notes and the lyrics lack the requisite originality").

---

[6] Defendants argue that Mr. Pettibone could not be liable for copyright infringement because he gained an ownership interest in *Love Break* when he mixed the recording for Salsoul Records. Mr. Pettibone testified that he added musical elements to *Chicago Bus Stop* when he created *Love Break*, including background singers, an organ, bass, and percussion instruments. (Dkt. No. 77-21, Pettibone Depo. 17:1-18:6.) This raises the question of whether Mr. Pettibone has ownership over aspects of *Love Break*. Plaintiff's expert, Dr. Stewart, agrees that Mr. Pettibone made alterations to the Horn Hit from *Chicago Bus Stop*. Mr. Pettibone took the Horn Hit from *Chicago Bus Stop* and removed the baritone saxophone before using them in *Love Break*. (Dkt. No. 75-1, Stewart Op. at 23.)

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | | Date | November 18, 2013 |
|---|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | | |

Plaintiff rests on Professor Nimmer's interpretation of *Swirsky*, arguing the Court is precluded from granting Defendants' Motions for Summary Judgment. According to Plaintiff, *Swirsky* stands for the proposition that "any plaintiff who can retain a testifying expert [in a music copyright infringement case] will avoid an adverse summary judgment." (Dkt. No. 72 at 12); *See* 4-13 Nimmer on Copyright § 13.03, n. 264.90 (citing to *Swirsky*, 376 F.3d at 843). The Court does not agree. In *Newton*, Plaintiff similarly attempted to create a triable issue by submitting portions of an expert opinion. 204 F. Supp. 2d at 1256. The Ninth Circuit affirmed the district court's decision to grant summary judgment despite conflicting expert opinions. *See Newton v. Diamond*, 388 F.3d 1189, 1196 (9th Cir. 2004). In *Newton*, plaintiff's expert did not provide relevant quantitative and qualitative analysis to produce a triable issue. Similarly, in this case, Plaintiff's expert opinion falls short on its qualitative and quantitative analysis. Plaintiff cannot create a triable issue of fact simply by submitting an expert opinion.

The Court finds that the Horn Hit, as a component of the musical composition and the sound recording, is not sufficiently original to merit copyright protection.[7]

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

---

[7] Plaintiff does not distinguish between the musical composition and sound recording.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

### i. Musical Composition





### a. Example 1: Dr. Alexander Stewart's Transcription of Horn Hit

"A musical composition captures an artist's music in written form." *Newton*, 204 F. Supp. 2d at 1249. An analysis of originality takes into account a work's melody, harmony and rhythm. *Id.* "The proper question to ask is whether the defendant appropriated, either quantitatively or qualitatively, constituent elements of the work that

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|----------|------------------------|------|-------------------|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

are original, such that the copying rises to the level of an unlawful appropriation." *Jarvis v. A & M Records*, 827 F. Supp. 282, 291 (D.N.J. 1993) (internal citation and quotation marks omitted); *see Feist*, 499 U.S. at 340.

First, it should be noted that the Horn Hit does not appear in the printed sheet music for *Vogue*. (Dkt. No. 107-1, Stewart Op. at 31.) Plaintiff's expert, Dr. Stewart argues that this should not diminish the Horn Hit's qualitative and quantitative importance to *Vogue*. To conduct his analysis, Dr. Stewart transcribed and compared the Horn Hit from *Love Break* and *Vogue* side by side as depicted in Exhibit 1. The two songs were recorded in different keys. To provide a better comparison, Dr. Stewart raised the pitch of *Vogue* by the "smallest tonal unit- one half-step." (Dkt. No. 75-1, Stewart Op. at 11.) The transcription appears over four measures. The top measures depict the single Horn Hit, and the bottom measures depict the double Horn Hit. Upon examination of Dr. Stewart's transcription, it is apparent that the alleged appropriation is too small to constitute a copyrightable element. Plaintiff's expert concedes that the Horn Hit transcribed in the four measures is the same single chord repeated in a single or double pattern. The chord consists of four notes. (Dkt. No. 77-11, Stewart Depo. 116:23-118:18.) Easily arrived at phrases and chord progressions are usually non-copyrightable. *Jarvis*, 827 F. Supp. at 291; *see also Newton*, 204 F. Supp. 2d at 1253 (C.D. Cal. 2002).

In *Newton*, the district court discussed cases in which sequences of less than six notes were qualitatively distinct enough to merit copyright protection. The *Newton* Court found that those cases involved: "1) sequences with accompanying lyrics; 2) sequences at the heart of the musical compositions; 3) sequences and lyrics that were repetitive; and/or 4) sequences that were based upon analyses of both the written composition and the sound recording." *Newton*, 204 F. Supp. 2d at 1254; *see, e.g.*, *Elsmere Music, Inc. v. National Broadcasting Co.*, 482 F.Supp. 741, 744 (S.D.N.Y. 1980) (finding four notes and the phrase "I Love" at the heart of a copyrighted song may be distinctive). None of those circumstances are applicable to the case at hand. Plaintiff unsuccessfully analogizes this case to *Santrayll v. Burrell*, 91 CIV. 3166 (PKL), 1996 WL 134803 (S.D.N.Y. Mar. 25, 1996). In *Santrayll*, the court found the repetition of the non-protectable word "uh-oh," in a distinctive rhythm, comprised a sufficiently original composition to render it protectable by the copyright laws. *Id.* at *4. The Court finds *Santrayll* inapposite. The word "uh-oh" was repeated four times to a rhythm and was the "hook" of plaintiffs'

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

compositions. *Id.* at *2-3. The Court finds this case distinguishable. The Horn Hit is not a component of the "hook" in Plaintiff's *Love Break* nor is it accompanied by a lyric. As a result, the Court finds that this single chord is not sufficiently original to merit copyright protection.

      Plaintiff contends that a single unprotectable element can merit copyright protection if there is a unique arrangement. According to Dr. Stewart, the call and response function of the single and double Horn Hit is preserved in *Vogue*, and "the two songs are almost exactly the same tempo, very little (if any) modification of the speed of passage was necessary." (Dkt. No. 75-1, Stewart Op. at 11.) Utilizing Dr. Stewart's opinion, however, it is apparent that *Vogue* does not mimic the same call and response pattern of the Horn Hits in *Love Break*. According to Dr. Stewart, in the *Vogue* compilation track, use of the Horn Hit proceeds as follows: single, double, double, double, double, and double.[8] (Dkt. No. 75-1, Stewart Op. at 16.) Similarly, in the *Vogue* radio edit, use of the Horn Hit proceeds as follows: single, double, double, double, and breakdown.[9] (Dkt. No. 75-1, Stewart Op. at 16.) Use of the Horn Hit before the alleged appropriation proceeds as follows: single, double, single, double, single, double, single (alleged sampled Horn Hit), double (alleged sampled Horn Hit).[10] (Dkt. No. 75-1, Stewart Op. at 14.) It is apparent that *Love Break* and in *Vogue* are distinct in their expressions of a call and response pattern, each using a unique mix of single and double Horn Hits.

---

[8] In the *Vogue* compilation track, a single Horn Hit can be heard at 1:14; a double Horn Hit can be heard at 1:20; a double Horn Hit can be heard at 3:59; a double Horn Hit can be heard at 4:24; a double Horn Hit can be heard at 4:40; and a final double Horn Hit can be heard at 4:57. (Dkt. No. 75-1, Stewart Op. at 16.)

[9] In the *Vogue* radio edit track a single Horn Hit can be heard at 0:56; a double Horn Hit can be heard at 1:02; a double Horn Hit can be heard at 3:41; a double Horn Hit can be heard at 4:05; and a breakdown of the Horn Hit can be heard at 4:18. (Dkt. No. 75-1, Stewart Op. at 16.)

[10] In the instrumental version of *Love Break,* the Horn Hit can be heard at the certain points in the song as follows: 3:11 single, 3:15 double, 3:19 single, 3:23 double, 3:27 single, 3:31 double, 3:35 single (alleged sampled Horn Hit), 3:39 double (alleged sampled Horn Hit), 3:42-4:06 similar figure (double and a single hit) 6x, 4:08 single, 4:12 single, 4:14 double, 4:16 single, 4:20 single, 4:22 double, 4:24 single, 4:28 single, 4:30 double, 4:32 single, 4:36 single, 4:38 double, 7:01 double, 7:04 single, 7:09 double, 7:13 single, 7:17-7:46 similar figure (a double and a single hit) 7x. (Dkt. No. 75-1, Stewart Op. at 14.)

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|----------|------------------------|------|-------------------|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

The Court finds the overall concept of a call and response pattern to be a musical *idea* that in itself is not protectable. Different variations on the call and response pattern can be heard in other works. For example, Defendants' expert Dr. Averill points the Court to *Love is the Message* (1972), in which the horn parts are very similar to *Love Break*. (Dkt. No. 46-3, Averill Op. at 14.) Plaintiff's expert, Dr. Stewart agrees that there are "obvious similarities in the instrumentation of *Love Break* and *Love is the Message*." (Dkt. No. 107-1, Stewart Op. at 27.) He opines that "these choices reflect musical *ideas*, not actual musical expression, and are not protectable under copyright." (Dkt. No. 107-1, Stewart Op. at 27.) The Court agrees with respect to the call and response pattern in *Vogue* and *Love Break*. While there may be similarities in the artists' choice to implement a call and response pattern, this is only a musical idea. Ideas are not protectable. *See Funky Films*, 462 F.3d 1072, 1077 (9th Cir. 2006) (holding that ideas are not protectable, but expressions that include "specific details of an author's rendering of ideas" are protectable). The artists' expressions of a call and response pattern in *Vogue* and *Love Break* are distinct.

The Court finds the Horn Hit is not sufficiently unique to be a copyrighted element of the musical composition.

### i. Sound Recording

Similarly, the Court finds the Horn Hit is not sufficiently unique to be a copyrighted element of the sound recording. "The sound recording is the aggregation of sounds captured in the recording while the song or tangible medium of expression embodied in the recording is the musical composition." *Newton*, 204 F. Supp. 2d at 1249-50. In essence, at issue here is a single stab, a sequence that "consists of only a single chord or 'hit,'" lasting for only a quarter second. (Dkt. No. 77-11, Stewart Depo. 116:23-118:18.) Mr. Pettibone's practice of using horns in a percussive manner "comparable to a 'hit' on the snare drum," is not unique. (Dkt. No. 46-3, Averill Op. at 14.) Playing horns in a percussive manner was a "continuous and coherent with practice . . . widespread in the Philly Sound, funk, soul, and disco." (Dkt. No. 46-3, Averill Op. at 14.) As Defendants point out, the single horn hit has been frequently used in prior works that predate *Chicago Bus Stop* and *Love Break*. (Dkt. No. 67-8, SOF ¶ 131.) Defendants' expert identifies additional works that use the percussive style of horns. Some were made by the Salsoul Orchestra, including *T.S.O.P.* (1974), *Ferry Avenue* (1975), *Get Down*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | | Date | November 18, 2013 |
|---|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | | |

*with the Philly Sound* (1975)." (Dkt. No. 67-8, SOF ¶ 131.) Defendants' expert highlights, *I'm On Your Side* (1976), as a track containing a horn sound particularly similar to the Horn Hit in *Love Break*. (Dkt. No. 46-3 at 15.) Artist James Brown also used this style of horns. They can be can be heard in *Papas Got a Brand New Bag* (1965), *Get Up Offa That Thing* (1976), and *Say it Loud* (1968). (Dkt. No. 67-1, Averill Op. at 11.)

     Plaintiff's CEO, Mr. Frasca, admits that other recordings have used a horn to play this chord in works that predated *Love Break*.[11] (Dkt. No. 46-4, Frasca Depo. 100:8-24.) Additionally, Plaintiff's former Vice President Mr. Shimkin, identified the horn sound in *Vogue* to be the same horn sound that was utilized in *Love is the Message*. (Dkt. No. 46-5, Shimkin Depo. 121:21-123:17; 128:20-129:9; 149:24-150:5.) Plaintiff's expert agrees that there are obvious similarities between *Love Break* and *Love is the Message*. (Dkt. No. 107-1, Stewart Op. at 27.) Finally, Dr. Stewart does not refute the statement that playing horns in a percussive manner was a common practice. (Dkt. No. 107-1, Stewart Op. ¶ 28.) In his attempt to discredit Dr. Averill's expert opinion, Dr. Stewart states:

> Dr. Averill seems to be saying that the Plaintiff's infringement case rests on the *idea* of using horns in a percussive manner and as well as the harmonic content of the horn part. Nothing could be further from the truth. I am well aware that ideas are not protectable . . . because sampling, by its very definition, proves access and copying, the originality of the materials here is not at issue.

---

[11] A: Well, I guess if you are asking is that chord in other music, I would assume yes, because there's a limited amount of chords. Was there a horn played in a sound recording prior --

Q: To Love Break--

A: --to Love Break.

Q: --that has that same sound that's in *Vogue* as in *Love Break*?

A: Yes. Horns were played prior to *Love Break* in recordings, absolutely.

(Dkt. No. 46-4, Frasca Depo 100:8-24.)

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

(Dkt. No. 107-1, Stewart Op. ¶ 28.) Dr. Stewart provides a legal conclusion. The Court is only bound to view the facts in a light most favorable to Plaintiff. Taking into consideration the popularity of this style of horn playing, the Court finds the Horn Hit sound in *Love Break* is not sufficiently original to be a copyrighted element of the work.

## B. Copying

Even if the alleged appropriation was subject to copyright protection, the Court finds Defendants' use to be *de minimis*. Plaintiff argues that the Court should not engage in a substantial similarity analysis or a *de minimis* inquiry because this is a digital sampling case. The Court does not agree. Plaintiff cites to *Bridgeport Music, Inc. v. Dimension Films*, which reversed a district court's decision to grant summary judgment. 410 F.3d 792 (6th Cir. 2005). In *Bridgeport Music*, the Sixth Circuit held that "no substantial similarity or *de minimis* inquiry should be undertaken at all when the defendant has not disputed that it digitally sampled a copyrighted sound recording." *Id.* at 798. This case is not applicable for three reasons. First, the Sixth Circuit's bright-line rule has not been adopted by the Ninth Circuit. In *Newton*, the Ninth Circuit held that "[t]he practice of music sampling will often present cases where the degree of similarity is high . . . . Yet as Nimmer explains, '[if] the similarity is only as to nonessential matters, then a finding of no substantial similarity should result.'" *Newton*, 388 F.3d at 1195. Second, Defendants have not conceded copying. Mr. Pettibone contends he independently created the Horn Hit through the use of a "proteus emulator" for *Vogue*. (Dkt. No. 67-8, SOF ¶ 54.) Third, Plaintiff's experts Mark Rubel ("Mr. Rubel") and Dr. Stewart admit there is no scientific evidence of sampling of the Horn Hit (Dkt. No. 67-8, SOF ¶ 61.) Attempts to undo Mr. Pettibone's supposed manipulation of the Horn Hit in *Vogue* to match the Horn Hit in *Love Break* have been inconclusive. (Dkt. No. 67-8, SOF ¶ 61.)

The Court therefore will engage in a substantial similarity and *de minimis* inquiry.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

### 1. Access

There is rarely evidence of copying, but a plaintiff may establish copying with indirect evidence. *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003). To support an inference that copying took place, the Plaintiff must demonstrate "the infringer had access to plaintiff's copyrighted work and that the works at issue are substantially similar in their protected elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir.2002) (internal citation omitted). "To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir.2009) (internal citation omitted).

In the instant case, there is no dispute that Mr. Pettibone had access to the Horn Hit from *Chicago Bus Stop* when he created *Love Break*. There is a dispute, however, as to whether Mr. Pettibone had access to the Horn Hit from the instrumental version of *Love Break* when he created *Vogue*. Plaintiff's designated witness James Drake testified that Plaintiff had no evidence or knowledge of when the instrumental version of *Love Break* was released. (Dkt. No. 67-8, SOF ¶ 10.) Defendants only offer inadmissible evidence to show that the instrumental version of *Love Break* was released *after Vogue* was recorded. The Court finds it unnecessary to determine access because the issue of originality and substantial similarity are dispositive.

### 2. Substantial Similarity

Once ownership and access are demonstrated, courts must inquire whether the two works are "substantially similar." *Funky Films*, 462 F.3d at 1076. "For an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement." *Newton*, 388 F.3d at 1192-93. Substantiality is measured by considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole. *See, e.g.*, *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 570 n.1 (9th Cir.1987) ("[T]he relevant inquiry is whether a substantial portion of the protectable material in the *plaintiff's* work was appropriated—not whether a substantial portion of *defendant's* work was derived from plaintiff's work."). "[T]rivial copying does not constitute actionable infringement." *Newton*, 388 F.3d at 1193. "Even

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

where there is some copying, that fact is not conclusive of infringement. Some copying is permitted. In addition to copying, it must be shown that this has been done to an unfair extent." *Id.* (quoting *West Publ'g Co. v. Edward Thompson Co.*, 169 F. 833, 861 (E.D.N.Y.1909) (internal quotation marks and citation marks omitted).

### 3. *De Minimis* Copying

Plaintiff contends that the sampled portions are not *de minimis* because they play an important role in *Love Break*. Plaintiff argues the Horn Hits are the "central or prominent compositional elements" in *Chicago Bus* Stop; however, Plaintiff overstates Dr. Stewart's evaluation. (*See* Dkt. No. 111.) Dr. Stewart opines that "[t]he total time [the Horn Hits] are central or prominent compositional elements in [*Chicago Bus Stop*] is 88 seconds or nearly 31% of the 4:47 song." (Dkt. No. 75-1, Stewart Op. ¶ 23.) Dr. Stewart has opined that the Horn Hit is only compositionally prominent in 31% of the song, not the entire song. While Dr. Stewart determines that the Horn Hit is qualitatively and quantitatively important to *Chicago Bus Stop*, the Court finds this analysis inconclusive for the question at hand. Importantly, Dr. Stewart does not opine that the appropriation was from *Chicago Bus Stop*. Rather he opines that the taking was undeniably from the composition and recording of *Love Break.* (Dkt. No. 107-1, Stewart Op. ¶ 30) (The "taking from the composition and recording of *Love Break* is undeniable.")

Assuming this is a derivative work, the right to create and sell derivative works is an exclusive right reserved to the copyright owner. 17 U.S.C. § 101 (2010). On the other hand, "aspects of a derivative work added by the derivative author are that author's property." *Stewart v. Abend*, 495 U.S. 207, 223 (1990).

The issue of ownership for *Love Break* is outstanding, but it is undisputed that the Horn Hit from *Love Break* is different from the Horn Hit in *Chicago Bus Stop*. The Court must assess the qualitative and quantitative significance of the copied portion in relation to Plaintiff's work as a whole. Dr. Stewart concedes that Mr. Pettibone removed a baritone sax, when he created *Love Break*'s Horn Hits. (Dkt. No. 75-1, Stewart Op. at 23.) Dr. Stewart does not offer more information that would cause the Court to disregard

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

the differences between the Horn Hits in *Love Break* and *Chicago Bus Stop*.[12] Nor does he provide an analysis of the qualitative and quantitative importance of the Horn Hit to *Love Break*. Though the Horn Hits are admittedly different, Plaintiff asks the Court to infer the Horn Hit is quantitatively and qualitatively significant to *Love Break* because it is structurally important to 31% of *Chicago Bus Stop*. (Dkt. No.72 at 27.) The Court is not equipped to issue expert opinions on music. Drawing from Defendants' expert opinion, the Horn Hit does not feature as prominently in *Love Break* as it did in *Chicago Bus Stop*. In the original version of *Love Break*, the 0.23 second Horn Hit appears in the song for only sixteen total seconds out of an approximately seven-minute recording. (Dkt. No. 67-8, SOF ¶¶ 28, 31.) The Horn Hit is even less prominent in the instrumental version, where it only appears for 11.5 seconds total, and is not sounded for the first 3:11 minutes of the approximately seven minute recording. (Dkt. No. 67-8, SOF ¶¶ 29-30.) Plaintiff does not offer evidence that the Horn Hit in *Vogue* is quantitatively or qualitatively important to *Love Break*.

Plaintiff's expert concludes that the Horn Hit is quantitatively and qualitatively significant to *Vogue*. He opines "[i]n *Vogue* these horn parts are used to signal important structural moments in the composition and, other than the vocals, are the only prominent 'acoustic' sound in the recording," but the Horn Hit appears eleven times in *Vogue* as discussed *supra* in Section IV(a)(i)(1). (Dkt. No. 75-1, Stewart Op. at 7.) The Horn Hit, however, has been excluded from some popular cover songs of *Vogue*, diminishing its importance to the musical composition.[13]

Ultimately, the Court finds the alleged infringement does not meet the average audience or ordinary observer test. Copying "is considered *de minimis* only if it is so meager and fragmentary that the average audience would not recognize the appropriation." *Fisher v. Dees*, 794 F.2d 432, 434 n.2 (9th Cir. 1986). This standard was confirmed in *Newton*, where the Ninth Circuit held that the court "looks to the response

---

[12] Dr. Stewart only offers an analysis where he tracks an overlap in the "structure of horn [and] string tracks" from *Chicago Bus Stop* and *Love Break*. (Dkt. No. 75-1, Stewart Op. at 19.) He opines that the two works have the same horn and string structure for 1:48 of *Chicago Bus Stop* and 1:47 of *Love Break*. (Dkt. No. 75-1, Stewart Op. at 19.)

[13] For example, they did not appear in Robyn Rihanna Fentry's ("Rihanna") cover of the song. (Dkt. No. 67-1, Averill Op. at 10.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

of the average audience, or ordinary observer, to determine whether a use is infringing," or whether a use is *de minimis*. 388 F.3d at 1193. In *Newton,* the Court also cited to the Second Circuit, which held that under the "ordinary observer" test "[t]wo works are substantially similar where 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal [of the two works] as the same.'" *Id.* (internal quotation marks omitted); *see Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 139 (2d Cir. 1998). Mr. Pettibone's sampling, if any, is *de minimis.*

Having listened to the sound recordings of *Chicago Bus Stop*, *Love Break*, and *Vogue*, the Court finds that no reasonable audience would find the sampled portions qualitatively or quantitatively significant in relation to the infringing work, nor would they recognize the appropriation. The Court finds that any sampling of the Horn Hit was *de minimis* or trivial.

## C. Defense to Copying

Additionally, Defendants offer an affirmative defense to the claim of copyright infringement. Defendant offers evidence to demonstrate that the Horn Hit used in *Vogue* was independently created. There are disputed facts associated with this argument. However, the Court will briefly discuss the defense because it further bolsters the decision to grant Defendants' Motions.

Once plaintiff has established both originality and copying, it "becomes incumbent upon defendant to rebut that *prima facie* case." *Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F. Supp. 980, 985 (S.D.N.Y. 1980) ("[S]ubstantial similarity and access are the *sine qua non* to a finding of copying," and the two elements establish a *prima facie* case.) This can be done by demonstrating defendant's "independent creation of the accused article," or by showing that defendant copied a work in the public domain rather than plaintiff's product. *Id.* Plaintiff has not proven a *prima facie* case of copying, and Mr. Pettibone offers evidence of independent creation which further weighs in favor of granting Defendants' Motions. Mr. Pettibone testified that he used a "proteus emulator" to create the horns. (Dkt. No. 67-8, SOF ¶ 54.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 12-05967 BRO (CWx) | Date | November 18, 2013 |
|---|---|---|---|
| Title | VMG Salsoul, LLC v. Madonna Louise Ciccone, et al | | |

## D. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motions for Summary Judgment.  Defendants are ORDERED to lodge a Proposed Judgment consistent with this ruling no later than November 25, 2013.


**IT IS SO ORDERED.**


|  | : |
|---|---|
| Initials of Preparer | Rf |