1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   Lorenzo Pryor et al.,        )  CV 13-04344 RSWL (AJWx)
                                   )
12                 Plaintiffs,     )
                                   )  **ORDER re: Defendants'**
13                                 )  **Motion to Dismiss and**
         v.                        )  **Strike** [42]
14                                 )
     Warner/Chappell Music, Inc.   )
15   et al.,                       )
                                   )
16                                 )
                                   )
17                 Defendants.     )
                                   )
18                                 )
                                   )
19   _____)

20        Currently before the Court is Defendants Warner

21   Brothers Records, Inc. ("WB Records"), WEA

22   International, Inc. ("WEA"), Tommy Boy Entertainment,

23   LLC ("TB Entertainment"), and T-Boy Music, LLC's ("TB

24   Music") Motion to Dismiss and Strike [42].  Having

25   reviewed all papers submitted pertaining to this

26   Motion, and having considered all arguments presented

27   to the Court, the Court **NOW FINDS AND RULES AS FOLLOWS:**

28        The Court **GRANTS in part and DENIES in part**

1  Defendants' Motion to Dismiss.

2                    **I.   BACKGROUND**

3  **A.   Factual Background**

4       Plaintiffs Lorenzo Pryor, Trena Steward, and Karla

5  Ray's (collectively, "Plaintiffs") are children of the

6  deceased David Pryor, of the music group Thunder &

7  Lightning.  Fourth Am. Compl. ¶¶ 4-6.  Each of the

8  Plaintiffs has an ownership interest in the song

9  entitled "Bumpin' Bus Stop," which was written by David

10 Pryor.  Id.

11      Defendant Erik Francis Schrody a/k/a/ Everlast

12 ("Everlast") is an American singer and songwriter; he

13 is the front-man for the rap group House of Pain.  Id.

14 at ¶ 7.  Defendant WB Records is an American record

15 company engaged in the business of manufacturing,

16 selling, and distributing musical recordings.  Id.

17 Defendant WB Records is owned by its parent company,

18 Warner Music Group ("WMG").  Defendant Rhino

19 Entertainment Company ("Rhino") is an American record

20 company owned by WMG.  Defendant WEA ships and

21 distributes WMG and Rhino affiliated musical recordings

22 internationally.  Id.  Defendant TB Music is an

23 American music publishing company and is the

24 subdivision of Defendant TB Entertainment, which

25 publishes, produces, and distributes music.  Id.

26      Plaintiffs are the heirs of David Pryor, who wrote

27 the musical composition entitled "Bumpin' Bus Stop."

28 Id. at ¶ 9.  David Pryor also produced and recorded the

                          2

fixed sound recording for "Bumpin' Bus Stop." Id.
After he wrote the composition for "Bumpin' Bus Stop,"
David Pryor rented studio time, space, and equipment
from Gold Future Recording Studio in Kirkwood,
Missouri. Id. at ¶¶ 10-11. That recording session
with David Pryor and his band, the Play Boys, resulted
in a recording bearing the Gold Future label and
artwork. Id. at ¶ 11. On the A-Side of the Gold
Future record, David Pryor says, "Hey Gang, let me show
you something! It's the hottest thing and it's on its
way to the top! Step up front . . . you dig! Get down
with the Bus Stop!" Id. at ¶ 12. In 1974, after the
Gold Future record was fully mixed and complete, David
Pryor had a copyright notice stamped on his record
while he and his band members promoted and distributed
the record. Id. at ¶ 13.

In 1975, after David Pryor presented his Gold
Future record to Private Stock Records, Private Stock
Records used its equipment to enhance the mix and sound
quality of the original recording for "Bumpin' Bus
Stop." Id. at ¶ 14. Private Stock Records changed the
name of David Pryor's band to "Thunder & Lightning,"
changed the record title's spelling, and changed the
record's artwork. Id.

Private Stock Record's music publisher, Caesar's
Music Library ("Caesar's Music"), federally registered
the composition to "Bumpin' Bus Stop" in January 1975
(Reg. No. Eu563138 and Eu563139). Id. at ¶ 15. The

3

1  registrations misattribute authorship and omit that the
2  work was based on David Pryor's preexisting 1974 work.
3  Id.

4      David Pryor did not give Caesar's Music an
5  assignment of rights or an exclusive license to the
6  composition or record for "Bumpin' Bus Stop." Id. at ¶
7  16. David Pryor likewise did not grant Caesar's Music
8  an assignment or transfer of his renewal rights in the
9  composition or record for "Bumpin' Bus Stop." Id.
10 Private Stock Records obtained a compulsory license to
11 distribute the record of "Bumpin' Bus Stop." Id.

12     David Pryor died on May 14, 2006. Id. at ¶ 18.
13 David Pryor did not discover any of the alleged acts of
14 infringement by the Defendants during his lifetime.
15 Id. at ¶ 19. On June 17, 2011, the Probate Division of
16 the Circuit Court of St. Louis County, Missouri,
17 entered a Judgment Determining Heirs, granting
18 ownership rights in the recording and composition of
19 "Bumpin' Bus Stop" to Trena Steward, Lorenzo Pryor,
20 Karla Ray, Sheila Hines, and Margaret Pryor. Id. at ¶
21 20, Ex. 3.

22     After the entry of the Judgment Determining Heirs,
23 Plaintiffs demanded that Private Stock Records and
24 Caesar's Music either furnish proof of any claim of
25 ownership or correct the inaccurate copyright
26 registrations. Id. at ¶ 22. On August 16, 2011,
27 Caesar's Music assigned to Plaintiffs any and all of
28 its purported rights in and to "Bumpin' Bus Stop" in

4

1   exchange for a release of claims made by Plaintiffs.

2   Id.  On October 16, 2012, Private Stock Records did the

3   same.  Id.

4       Plaintiffs' composition and recording rights are

5   the subject of Copyright Registration Nos. V3612D942

6   and V3613D044.  Id. at ¶ 23.

7       Plaintiffs discovered that Caesar's Music entered

8   into a sample agreement, dated June 16, 1998, with

9   Defendant TB Music to sample and create derivative

10  works based on the composition for "Bumpin' Bus Stop."

11  Id. at ¶ 25.  Plaintiffs allege that Caesar's Music was

12  not authorized to consent to the making of derivative

13  works based on the composition for "Bumpin' Bus Stop."

14  Id.  Plaintiffs further allege that Defendant TB Music

15  gave unauthorized permission to Defendants WB

16  Entertainment, Rhino, WEA, Warner/Chappell, and WB

17  Records to use, exploit, and distribute a sample of the

18  composition and record to "Bumpin' Bus Stop" by

19  releasing a record entitled "Get Down."  Id.  "Get

20  Down" allegedly features Defendant Everlast and bears

21  the copyright registration No. PA 917-380.  Id.  "Get

22  Down" allegedly infringes on Plaintiffs' copyright by

23  repeatedly sampling David Pryor's voice from the sound

24  recording of "Bumpin' Bus Stop."  Id. at ¶ 31.

25  **B.   Procedural Background**

26      Plaintiffs filed their initial Complaint on June

27  17, 2013 [1].  On June 20, 2013, they filed their First

28  Amended Complaint [6].  On October 4, 2013, the

Plaintiffs filed a Second Amended Complaint [12].   On November 18, 2013, the Plaintiffs filed a Third Amended Complaint ("TAC") [16].   In their TAC, Plaintiffs brought: (1) a claim for copyright infringement of the sound recording to "Bumpin' Bus Stop" against Defendants TB Entertainment, WB Records, WEA, and Rhino arising from their manufacture and distribution of Defendant Everlast's "Get Down" (TAC ¶¶ 29-47); (2) contributory copyright infringement against Defendant TB Music (Id. at ¶¶ 48-52); (3) breach of an express contract against Defendant TB Music (Id. at ¶¶ 53-62); and (4) copyright infringement against Defendant WB Entertainment for allegedly creating an infringing musical recording in the opening theme song for the sitcom "Joey" (Id. at ¶¶ 63-71).

Defendants TB Music and Warner/Chappell filed a Motion to Dismiss Plaintiffs' second claim for contributory copyright infringement and third claim for breach of express contract on December 9, 2013 [19]. Plaintiffs voluntarily dismissed Defendant Warner/Chappell on December 18, 2013 [26].

On February 20, 2014, the Court granted Defendants Warner/Chappell and TB Music's Motion to Dismiss the TAC; specifically, the Court dismissed Plaintiffs' second claim for contributory copyright infringement against Defendant TB Music with twenty days leave to amend and dismissed Plaintiffs' third claim for breach of express contract against Defendant TB Music without

leave to amend [32].

On March 5, 2014, the Court granted the Parties' stipulation to dismiss the case as to Defendant WB Entertainment [36].

On March 11, 2014, Plaintiffs filed a Fourth Amended Complaint, in which they bring: (1) a claim for copyright infringement of the sound recording to "Bumpin' Bus Stop" against Defendants Everlast, TB Entertainment, WB Records, WEA, and Rhino arising from their manufacture and distribution of Defendant Everlast's "Get Down" (Fourth Am. Compl. ¶¶ 29-47) and (2) contributory copyright infringement against Defendants Everlast and TB Music (Id. at ¶¶ 48-52).

On March 25, 2014, Defendants WB Records, WEA, Tommy Boy Music[1], and TB Music filed a Motion to Dismiss and Strike the Fourth Amended Complaint [42]. Plaintiffs filed an Opposition on April 1, 2014 and Defendants filed a Reply on April 8, 2014. Plaintiffs thereafter filed a Motion for Leave to Add New Claim [55]. Defendants' Motion to Dismiss was set for hearing on April 22, 2014 and was taken under submission on April 18, 2014.

## II.  Legal Standard

**A.   Motion to Dismiss - Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of one or more claims if

---

[1] Defendants assert that Tommy Boy Music, Inc. was incorrectly sued as Tommy Boy Entertainment, LLC.

the pleading fails to state a claim upon which relief
can be granted.  Dismissal can be based on a lack of
cognizable legal theory or lack of sufficient facts
alleged under a cognizable legal theory.  <u>Balistreri v.
Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.
1990).  However, a party is not required to state the
legal basis for its claim, only the facts underlying
it.  <u>McCalden v. Cal. Library Ass'n</u>, 955 F.2d 1214,
1223 (9th Cir. 1990).  In a Rule 12(b)(6) motion to
dismiss, a court must presume all factual allegations
of the complaint to be true and draw all reasonable
inferences in favor of the non-moving party.  <u>Klarfeld
v. United States</u>, 944 F.2d 583, 585 (9th Cir. 1991).

     The question presented by a motion to dismiss is
not whether the plaintiff will prevail in the action,
but whether the plaintiff is entitled to offer evidence
in support of its claim.  <u>Swierkiewica v. Sorema N.A.</u>,
534 U.S. 506, 511 (2002).  "While a complaint attacked
by a Rule 12(b)(6) motion to dismiss does not need
detailed factual allegations, a plaintiff's obligation
to provide the 'grounds' of his 'entitle[ment] to
relief' requires more than labels and conclusions, and
a formulaic recitation of a cause of action's elements
will not do."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.
544, 555 (2007) (internal citation omitted).  Although
specific facts are not necessary if the complaint gives
the defendant fair notice of the claim and the grounds
upon which the claim rests, a complaint must

nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

If dismissed, a court must then decide whether to grant leave to amend. The Ninth Circuit has repeatedly held that a district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

## III. Discussion

### A. Request for Judicial Notice

Plaintiffs request that the Court take judicial notice of three documents: (1) Defendant TB Music's copyright registration for the composition, "Get Down," (2) a copy of the 1998 Sample Agreement between Defendant TB Music and Caesar's Music, and (3) the Certificate of Recordation and relevant excerpts from the Recorded Assignment of Copyright between Defendant TB Music and WB Music Corp. for the work entitled, "Get Down."

Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." Lee v. City of L.A., 250 F.3d 668, 689 (9th Cir. 2001). Further, a trial court must take judicial notice of facts "if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). A fact

is appropriate for judicial notice only if it is not
subject to reasonable dispute because it is (1)
generally known within the territorial jurisdiction of
the trial court or (2) capable of accurate and ready
determination by resort to sources whose accuracy
cannot reasonably be questioned.  Fed. R. Evid. 201(b).

The Court notes that it has already taken judicial
notice of the copyright registration for the
composition, "Get Down" and the 1998 Sample Agreement.
See Dkt. # 32-9.  As to the Certificate of Recordation
and relevant excerpts, the Court finds that it has been
supplied with the necessary information regarding this
document and that this document is capable of accurate
and ready determination by resort to sources whose
accuracy cannot reasonably be questioned.  As such, the
Court **GRANTS** Plaintiffs' request that the Court take
judicial notice of the Certificate of Recordation and
relevant excerpts.

Defendants, in turn, request that the Court take
judicial notice of the "Bumpin' Bus Stop" sound
recording.  The Court **DENIES** Defendants' request for
judicial notice as to the "Bumpin' Bus Stop" sound
recording as this item does not appear to be a "matter
of public record."  However, the Court notes that the
"Bumpin' Bus Stop" sound recording is specifically
referenced in Plaintiffs' Fourth Amended Complaint.
See, e.g., Fourth Amended Compl. ¶¶ 1, 4, 5, 6, 9, 12.
Further, the "Bumpin' Bus Stop" sound recording serves

as the basis for Plaintiffs' claims.  Therefore, this Court may apply the doctrine of "incorporat[ion] by reference," thereby treating the "Bumpin' Bus Stop" sound recording as part of the Fourth Amended Complaint and assuming that "its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  <u>See</u> <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).[2]

**B.   <u>Plaintiffs' Request to Convert Defendants' Motion to Dismiss into a Motion for Summary Judgment</u>**

Plaintiffs request that the Court convert Defendants' Motion to Dismiss into a Motion for Summary Judgment.  Plaintiffs attach several declarations and exhibits in support of their Opposition to Defendants' Motion to Dismiss.

As a general rule, a court may not look to matters beyond the complaint without converting a motion to dismiss into one for summary judgment.  <u>Datel Holdings</u> <u>Ltd. v. Microsoft Corp.</u>, 712 F. Supp. 2d 974, 983 (N.D. Cal. 2010) (citations omitted).  However, Fed. R. Civ. P. 12(d) provides that "[i]f, on a motion under Rule

---

[2] The Court further notes that Plaintiffs have lodged with the Court as Exhibit 2 a CD copy of the "Get Down" sound recording, in connection with their opposition to Defendants' Motion to Dismiss. Dkt. # 51.  The "Get Down" sound recording is specifically referenced in Plaintiffs' Fourth Amended Complaint. <u>See,</u> <u>e.g.</u>, Fourth Am. Compl. ¶¶ 31-32.  As such, the Court applies the doctrine of "incorporat[ion] by reference," thereby treating the "Get Down" sound recording as part of the Fourth Amended Complaint and assuming that "its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." <u>See</u> <u>Ritchie</u>, 342 F.3d at 908.

12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

The Court finds that Defendants' Motion to Dismiss does not present "matters outside the pleadings." Rather, the Motion is based on Plaintiffs' Fourth Amended Complaint, the "Bumpin' Bus Stop" sound recording identified in the Complaint, and judicially noticed documents.  Thus, the Court declines Plaintiffs' request to convert Defendants' Motion to Dismiss into a motion for summary judgment and instead excludes Plaintiffs' proffered extraneous materials. See Boisvert v. Li, No. 13–cv–01590 NC2014, 2014 WL 279915, at *4 (N.D. Cal. Jan. 24, 2014).

**C.   Defendants' Motion to Dismiss**

　　1.   Claim for Copyright Infringement of the Sound Recording

To establish copyright infringement, two elements must be proven: (1) ownership of a valid copyright; and (2) copying of constituent elements that are original. See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

Copying may be established by showing that the works in question are "substantially similar in their protected elements" and that the infringing party had access to the copyrighted work.  Metcalf v. Bochco, 294 F.3d 1069, 1072 (9th Cir. 2002).

Defendants do not appear to dispute that Plaintiffs are the owners of a valid copyright.  Instead, Defendants argue that Plaintiffs cannot assert a claim for copyright infringement because the two-word sample of "get down" is not original, and alternatively, is de minimis.

a.  *The Two Word Snippet is Original*

Defendants argue that Plaintiffs' claim for copyright infringement fails because the half-second snippet of two words, "get down" is not original. "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." Feist, 499 U.S. at 345.  "The requisite level of creativity is extremely low." Id.  However, "copyright law denies protection to 'fragmentary words and phrases' and to 'forms of expression dictated solely at functional considerations' on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection." Hutchins v. Zoll Med. Corp., 492 F.3d 1377, 1385 (Fed. Cir. 2007) (quoting CMM Cable Rep, Inc. v. Ocean Coast Props, Inc., 97 F.3d 1504, 1519 (1st Cir. 1996)).

In Santrayll v. Burrell, defendants argued that the relevant portion of the songs, the one measure "hook," consisting of the word "uh-oh" repeated four times to a particular rhythm, was not protectible.  No. 91 CIV.

13

3166 (PKL), 1996 WL 134803, at *1 (S.D.N.Y. Mar. 25, 1996).  However, the court held that the repetition of "uh-oh" in a distinctive rhythm comprises a sufficiently original composition to render it protectible by copyright laws.  Id. at *2. Additionally, in Tin Pan Apple, Inc. v. Miller Brewing Co., the court concluded that "a jury could find that the Hugga Hugga and Brrr sounds, used as lyrics in the copyrighted work, are sufficiently creative to warrant copyright protection," and thus denied the defendants' motion for summary judgment dismissing plaintiffs' copyright claim.  No. 88 Civ. 4085 (CSH), 1994 WL 62360, at *2-4 (S.D.N.Y. Feb. 24, 1994).

On balance, the Court finds that the two word snippet of "get down" exhibits the minimal level of creativity necessary to warrant copyright protection. Plaintiffs allege in their Fourth Amended Complaint that David Pryor produced and recorded the fixed sound recording for "Bumpin' Bus Stop."  Fourth Amended Compl. ¶ 9.  A recording session with David Pryor and his band, the Play Boys, resulted in a recording bearing the Gold Future label and artwork.  Id. at ¶ 11.  Plaintiffs allege that the fixed sound recording embodies the musical composition entitled "Bumpin' Bus Stop" and that the sound recording and musical composition both feature "Pryor's *signature* voice and original music played by Pryor's band, The Play Boys." Id. at ¶ 9 (emphasis added).  Plaintiffs allege that on

14

the A-Side of the Gold Future record, David Pryor says, "*in his signature voice*," "Hey Gang, let me show you something!  It's the hottest thing and it's on its way to the top!  Step up front . . . you dig!  Get down with the Bus Stop!"  <u>Id.</u> at ¶ 12 (emphasis added). Like in <u>Santrayll</u>, in which the court found that the repetition of "uh-oh" in a distinctive rhythm was protectible under the copyright laws, Plaintiffs' allegations that "Bumpin' Bus Stop" features David Pryor's "signature" voice is enough to satisfy the "extremely low" requisite level of creativity to warrant copyright protection.  Thus, the Court finds that the half-second snippet of two words, "get down" is original and warrants copyright protection.

　　　　　b.  *De minimis use*

　　For an unauthorized use of a copyrighted work to be actionable, the use must be significant enough to constitute infringement.  <u>Newton v. Diamond</u>, 388 F.3d 1189, 1192-93 (9th Cir. 2003) (citing <u>Ringgold v. Black Entm't Television, Inc.</u>, 126 F.3d 70, 74-75 (2d Cir. 1997).  In answering that question, the Court must distinguish between whether there is a high enough degree of similarity between the works to establish copying, and whether that copying is substantial enough to constitute infringement.  <u>Id.</u> at 1194-95.  "[E]ven where the fact of copying is conceded, no legal consequences will follow from that fact unless the copying is substantial."  <u>Id.</u> at 1193 (citing

1  <u>Laureyssens v. Idea Group, Inc.</u>, 964 F.2d 131, 140 (2d

2  Cir. 1992); 4 Melville B. Nimmer & David Nimmer, Nimmer

3  on Copyright § 13.03 [A], at 13-30.2).

4      Substantiality is measured by considering the

5  qualitative and quantitative significance of the copied

6  portion in relation to the plaintiff's work as a whole.

7  <u>Id.</u> at 1195 (citing <u>Worth v. Selchow & Righter Co.</u>, 827

8  F.2d 569, 570 n.1 (9th Cir. 1987) ("[T]he relevant

9  inquiry is whether a substantial portion of the

10 protectable material in the plaintiff's work was

11 appropriated—not whether a substantial portion of

12 defendant's work was derived from plaintiff's work.")).

13 A use is insubstantial or de minimis "only if it is so

14 meager and fragmentary that the average audience would

15 not recognize the appropriation." <u>Id.</u> (citing <u>Fisher</u>

16 <u>v. Dees</u>, 794 F.2d 432, 434 n.2 (9th Cir. 1986)).

17     The Court finds that, at this juncture, Plaintiff

18 has sufficiently alleged that the copying can be

19 substantial enough to constitute infringement.[3]  As to

20

21     [3] While Plaintiffs allege that <u>Bridgeport Music, Inc. v.
22 Dimension Films</u>, 410 F.3d 792 (6th Cir. 2005) stands for the
   proposition that any copying of a sound recording, no matter how
23 trivial, is an infringement, the Court declines to apply
   <u>Bridgeport</u> to the facts of this case.  The Sixth Circuit's
24 bright-line rule has not been adopted by the Ninth Circuit.  <u>VMG
   Salsoul, LLC v. Ciccone</u>, No. CV 12-05967 BRO (Cwx), 2013 WL
25 8600435, at *9 (C.D. Cal. Nov. 18, 2013).  In fact, the rule
   articulated by the Sixth Circuit in <u>Bridgeport</u> appears to be in
26 contrast to <u>Newton</u>, in which the Ninth Circuit explicitly stated
   that "no legal consequences will follow from [alleged copying]
27 unless the copying is substantial."  388 F.3d at 1192.  Thus, the
   Court declines to adopt the Sixth Circuit's reasoning in
28 <u>Bridgeport</u> to the particular facts of this case.

the quantitative significance of the two words, "get
down," to the original work - "Bumpin' Bus Stop" - as a
whole, the two words are a half-second out of a
recording that Plaintiffs allege is 6.6424 minutes
long.  <u>See</u> Fourth Am. Compl. ¶ 12.  However, as for the
qualitative significance of the two words to "Bumpin'
Bus Stop" as a whole, the Court finds that Plaintiffs
have sufficiently alleged, albeit just barely, the
qualitative import of the sample to the original.
Namely, as discussed above, the Plaintiffs have
repeatedly alleged in their Fourth Amended Complaint
that one can hear David Pryor's "signature" voice
saying, "Get down with the Bus Stop!"  <u>See</u> Fourth Am.
Compl. ¶¶ 9, 12.  Based on Plaintiffs' allegations of
David Pryor's signature voice, the Court cannot
conclude, on Defendants' Motion to Dismiss, that the
use "is so meager and fragmentary that the average
audience would not recognize the appropriation."  <u>See</u>
<u>Newton</u>, 388 F.3d at 1193.  Thus, the Court **DENIES**
Defendants' Motion to Dismiss Plaintiff's copyright
infringement claim.

  2.  <u>Contributory Copyright Infringement Claim</u>
      <u>Against Defendant TB Music</u>

  "Contributory copyright infringement is a form of
secondary liability with roots in the tort-law concepts
of enterprise liability and imputed intent."  <u>Perfect</u>
<u>10, Inc. v. Visa Int'l Serv. Ass'n</u>, 494 F.3d 788, 794-
95 (9th Cir. 2007) (citing <u>Fonovisa, Inc. v. Cherry</u>

17

1  <u>Auction, Inc.</u>, 76 F.3d 259, 264 (9th Cir. 1996);

2  <u>Perfect 10, Inc. v. Amazon.com, Inc.</u>, 487 F.3d 701 (9th

3  Cir. 2007)).  In the Ninth Circuit, "a defendant is a

4  contributory infringer if it (1) has knowledge of a

5  third party's infringing activity, and (2) 'induces,

6  causes, or materially contributes to the infringing

7  conduct.'"  <u>Id.</u> at 795 (quoting <u>Ellison v. Robertson</u>,

8  357 F.3d 1072, 1076 (9th Cir. 2004)).  Put another way,

9  "one contributorily infringes when he (1) has knowledge

10  of another's infringement and (2) either (a) materially

11  contributes to or (b) induces that infringement."  <u>Id.</u>

12       a.  *Knowledge*

13     The Court finds that Plaintiffs have failed to

14  sufficiently allege Defendant TB Music's knowledge of

15  direct infringement by third parties.

16     "Contributory liability requires that the secondary

17  infringer 'know or have reason to know' of direct

18  infringement."  <u>A&M Records, Inc. v. Napster, Inc.</u>, 239

19  F.3d 1004, 1020 (9th Cir. 2001) (quoting <u>Cable/Home</u>

20  <u>Commc'n Corp. v. Network Prods., Inc.</u>, 902 F.2d 829,

21  845-46 n.29 (11th Cir. 1990); <u>Religious Tech. Ctr. v.</u>

22  <u>Netcom On-Line Commc'n Servs., Inc.</u>, 907 F. Supp. 1361,

23  1373-74 (N.D. Cal. 1995)).  Moreover, to establish

24  liability for contributory copyright infringement,

25  Plaintiffs must allege "more than a generalized

26  knowledge by the [Defendant] of the possibility of

27  infringement."  <u>Luvdarts, LLC v. AT&T Mobility, LLC</u>,

28  710 F.3d 1068, 1072 (9th Cir. 2013).  In short, so long

18

as Defendant TB Music knew that "Get Down" contained an
unauthorized sample of the "Bumpin' Bus Stop" sound
recording and that the other Defendants' distribution
of "Get Down" would infringe on that sound recording,
Defendant TB Music would have the requisite knowledge
for contributory copyright infringement.

Plaintiffs have alleged that TB Music "knew or had
reason to know of the infringement upon initial release
of the recording." Fourth Am. Compl. ¶ 51.
Alternatively, Plaintiffs allege that Defendants TB
Music and Defendant Everlast were made aware after the
release of "Get Down" that the vocal performance
embodied in the sample was not that of Defendant
Everlast, and that the sample was not authorized by
David Pryor or Plaintiffs. Id. Plaintiffs allege that
the Sample Agreement provided that the license was
limited to the use of the Composition only and that the
infringing recording had already been manufactured upon
Defendant TB Music entering into the Sample Agreement.
Id. Plaintiffs allege that the "infringing recording
containing the unauthorized sample was already made and
approved by the Defendants internally." Id.

Again, however, Plaintiffs fail to allege how
Defendant TB Music knew or had reason to know that "Get
Down" included an unauthorized, infringing sample of
the "Bumpin' Bus Stop" sound recording. To cure this
defect, Plaintiffs attempt to assert a claim against
Defendant Everlast and assert that Defendant Everlast

knew that the sampled vocal performance was not his but was rather the voice of David Pryor.  <u>Id.</u>  However, alleging facts to support that Defendant Everlast had knowledge of the allegedly-infringing sample does not establish *Defendant TB Music's* knowledge of the allegedly-infringing sample.  Moreover, Plaintiffs again fail to plausibly allege how Defendant TB Music knew that the directly infringing Defendants - Defendants WB Entertainment, WB Records, WEA, and Rhino - would infringe as a result of Defendant TB Music's licensing of "Get Down."  For this reason, the Court **GRANTS** Defendant TB Music's Motion to Dismiss Plaintiffs' contributory copyright infringement claim.

The Court's discretion in deciding whether to dismiss without leave to amend is "particularly broad" when the plaintiff previously has been granted leave to amend.  <u>Zucco Partners, LLC v. Digimarc Corp.</u>, 552 F.3d 981, 1007 (9th Cir. 2009); <u>see also RDF Media Ltd. v. Fox Broad. Co.</u>, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005).  Repeated failure to cure deficient pleadings provides grounds to deny leave to amend.  <u>Id.</u>  Here, the Court notes that it granted Defendants' Motion to Dismiss Plaintiffs' contributory copyright infringement claim with twenty days leave to amend.  Dkt. # 32.  Because Plaintiffs have failed to cure their pleading deficiencies, even after being given an opportunity to so, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' contributory copyright infringement claim

1  against Defendant TB Music without leave to amend.

2  **C.**  **Defendants' Motion to Strike**

3     Federal Rule of Civil Procedure 12(f) states that

4  "[t]he court may strike from a pleading an insufficient

5  defense or any redundant, immaterial, impertinent, or

6  scandalous matter."  Fed. R. Civ. P. 12(f).

7  "Immaterial" matter is that which has no essential or

8  important relationship to the claim for relief or the

9  defenses being pleaded.  <u>Fantasy, Inc. v. Fogerty</u>, 984

10  F.2d 1524, 1527 (9th Cir. 1993), rev'd on other

11  grounds, <u>Fogerty v. Fantasy, Inc.</u>, 510 U.S. 517

12  (1994)).  "Impertinent" matter consists of statements

13  that do not pertain, and are not necessary, to the

14  issues in question."  <u>Id.</u>

15     Defendants request that the Court strike

16  Plaintiffs' continued references to Warner/Chappell as

17  a party-defendant in this Action.  Plaintiffs

18  previously named Warner/Chappell as a defendant, and

19  then stipulated to Warner/Chappell's dismissal.  Dkt. #

20  35.  The Court dismissed Warner/Chappell from this

21  Action.  Dkt. # 36.  However, Plaintiffs' Fourth

22  Amended Complaint lists Warner/Chappell as a defendant

23  in the caption.  Warner/Chappell is also frequently

24  referenced within the Fourth Amended Complaint.  In

25  light of the fact that the Court has already dismissed

26  Defendants Warner/Chappell from this Action, and

27  Plaintiffs have indicated in their Opposition that they

28  "oppose the 12(b)(6) motion to dismiss only," (Opp'n

1:3) the Court **GRANTS** Defendants' Motion to Strike
Plaintiffs' references to Warner/Chappell throughout
the Fourth Amended Complaint.

### IV.  Conclusion

Based on the above, the Court **GRANTS in part and
DENIES in part** Defendants' Motion to Dismiss.
Specifically, the Court **DENIES** Defendants' Motion to
Dismiss Plaintiffs' claim for copyright infringement.
The Court **GRANTS** Defendants' Motion to Dismiss
Plaintiffs' claim for contributory copyright
infringement against Defendant TB Music **without leave
to amend.**  Additionally, the Court **STRIKES** Plaintiffs'
references to Warner/Chappell throughout the Fourth
Amended Complaint.

**IT IS SO ORDERED.**

DATED: June 20, 2014       RONALD S.W. LEW
                           _____
                           **HONORABLE RONALD S.W. LEW**
                           Senior U.S. District Judge